No. 80-329

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

YVONNE MARTINEZ,

Charging party & Respondent,

vs.

YELLOWSTONE COUNTY WELFARE DPEARTMENT.,

Petitioner and Respondent.

---

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone.
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Anderson, Edwards and Molloy, Billings, Montana
Donald W. Molloy argued, Billings, Montana

For Respondent:

Harold F. Hanser, County attorney, argued, Billings,
Montana
C. David Gorton argued, Billings, Montana

For Amicus Curiae:

Frederick Sherwood argued, Helena, Montana

---

Submitted: February 18, 1981

Decided: March 27, 1981

Filed: MAR 27 1981

*Thomas J. Kearney*
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

In 1977, appellant, Yvonne Martinez filed a complaint with the Montana Human Rights Commission (Commission), charging the respondent, Yellowstone County Welfare Department (Department), with racial discrimination. The charge stemmed from the Department's rejection of Martinez' applications for several job vacancies. Following an investigation, the Commission conducted a hearing. On November 1, 1979, the Commission issued findings of fact, conclusions of law and an order determining that the Department had unlawfully discriminated against Martinez. The Department filed a petition for judicial review in the District Court of the Thirteenth Judicial District, Honorable Judge Charles Luedke presiding. On August 19, 1980, Judge Luedke entered an order vacating the Commission's findings of fact, conclusions of law and order and granting the Department's motion to dismiss the complaint. From this order, Martinez appeals.

Yvonne Martinez is a fifty-two-year-old black woman. She speaks, reads and writes proficiently in both English and Spanish. From February 1973 to August 1974, Martinez was employed by the Department as an eligibility technician. During her employment, Martinez was recommended for and received permanent status with the Department, in spite of problems involving tardiness, absenteeism and personality conflicts.

In August 1974, Martinez voluntarily resigned from the Department and moved to California. Upon her termination, she received very favorable letters of recommendation from her immediate supervisors. In California, Martinez obtained employment with the San Diego Department of Public Welfare

as an eligibility technician advancing in position during her employment.

In June 1976, Martinez returned to Billings, Montana, and sought employment at the Department. She was advised by the Department Director James Greer to apply through the Montana Merit System. Martinez complied by having her test scores obtained in California transferred to the Montana Merit Counsel.

In October 1976, an eligibility technician vacancy arose at the Department. Martinez applied for the vacancy. The merit system register for Yellowstone County indicated that Martinez was the most qualified applicant. The Department had possession of this information but chose to reject Martinez' application and filled the position with a white female. Martinez testified that she called the Department concerning the position and was told by Jackie Hurick, assistant administrator of the Department, that the vacancy had been filled, and that they wouldn't be hiring any "niggers" anyway. Hurick, the alleged declarant, testified that no such statement was ever made. The Commission determined that this statement had, in fact, been made and the Commission's position was adopted by Judge Luedke in his order.

In December 1976 when a second vacancy arose, Martinez' name appeared on the merit system register as the most qualified applicant, not only in Yellowstone County, but in the entire State of Montana. The Department had possession of this information when it rejected Martinez' application and filled the position with a white female.

A third vacancy arose in February 1977. Again Martinez' name appeared first on the merit system register for both Yellowstone County and the entire State of Montana. The De-

-3-

partment had possession of this information when it rejected Martinez' application and filled the position with a white female clerical worker from another section of the Department.

During the period in which Martinez applied for job openings, the Department used three factors in filling vacancies. The director, James Greer, looked at the names of the top three applicants listed on the merit system register, considered intra-departmental applicants, even if their names did not appear on the merit register, and discussed the applicants with personnel in the Department.

Greer spoke primarily with three people concerning Martinez: Lou Hagerman, a supervisor in the office during Martinez' prior employment at the Department; Carole Chappell, a co-worker in the Department during Martinez' prior employment; and Jackie Hurick, assistant administrator of the Department.

It was the opinion of all three that Martinez had frequently been tardy, absent and had caused conflicts within the Department. All three recommended that Martinez not be rehired. Greer acknowledged that the opinions of these three people, especially Jackie Hurick, had a great impact on his decision to reject Martinez' applications.

Following a contested hearing in this matter, the Commission determined that appellant, Martinez, had been unlawfully discriminated against by the respondent, Department. In making this determination, the Commission relied upon and applied the principles governing employment discrimination cases, as set forth in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. The District Court acknowledged the Commission's reliance upon these principles but reversed the agency's determination due to what the court considered a ". . . failure to require

that the proof establish the existence of the essential elements of the charge of prohibited racial discrimination . . . ." According to the District Court "[d]iscrimination against complainant because of her membership in the black race requires first, proof that she is black and, second, that respondent knew she was black and, third, that she was denied employment because she was black." After reviewing the evidence, the District Court determined that no proof existed which established that James Greer, director of the Department, knew Martinez was black when he made his decisions to reject her applications.

The issues presented on appeal are as follows:

1. Whether the District Court erred in requiring proof of scienter on the part of James Greer?

2. Whether the District Court exceeded its statutory authority of review under section 2-4-704, MCA?

3. Whether the Commission erred in reducing appellant's award of backpay by use of information of interim wages not presented at the Commission hearing?

Appellant contends that it was error to require proof of Greer's state of mind. Appellant argues such a requirement exceeds the prima facie showing standard established in McDonnell Douglas v. Green, supra.

This is a case of first impression in Montana. The case arose under the provisions of Title 49, Human Rights Act, MCA, specifically section 49-2-303, MCA, which provides in pertinent part:

"(1) It is an unlawful discriminatory practice
for:

"(a) an employer to refuse employment to a person
. . . because of his race, creed, religion, marital
status, color, or national origin . . . ."

The provisions of Title 49, Montana Human Rights Act,

are closely modeled after Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., and to a lesser degree after the Age Discrimination in Employment Act, 29 U.S.C. §621, et seq. A considerable body of law has developed under these federal employment discrimination acts. Due to the parallel structure of the federal laws and the Montana Human Rights Act, this Court has examined the rationale of federal case law.

Under federal case law, unlawful employment discrimination claims are separated into three distinct categories: (1) disparate treatment, where a protected class member alleges unequal consideration, but where there are facially neutral hiring practices (McDonnell Douglas); (2) disparate treatment to a whole class where an employer regularly and purposefully treats a protected class less favorably in the employment process (International Brotherhood of Teamsters v. United States (1977), 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396); and (3) disparate impact, where an employer's practice is facially neutral, but in actuality affects a protected class more harshly than other classes. (Albemarle Paper Co. v. Moody (1975), 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280)

A complaining party is often unable to develop direct evidence of discrimination. As was noted in Loeb v. Textron, Inc., (1st Cir. 1979), 600 F.2d 1003, / 1014. ". . . (1) direct evidence of discrimination is likely to be unavailable, and (2) the employer has the best access to the reasons that prompted him to fire, reject, discipline or refuse to promote the complainant. . ." To ease this difficulty the United States Supreme Court in McDonnell Douglas enunciated the

elements of factual proof which make a prima facie case of discrimination for the plaintiff where the allegation is disparate treatment.

Once a complaining party establishes a prima facie case, an inference of discrimination arises by operation of law irrespective of whether direct evidence of discrimination exists. Furnco Construction Corp. v. Waters (1978), 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957. The elements constituting a prima facie case under each theory of discrimination may differ. In the case at bar, Martinez' complaint stemmed from unequal treatment where there were facially neutral hiring practices. Thus, this Court must focus on the elements constituting a prima facie case under the disparate treatment discrimination theory.

To make out a prima facie case of disparate treatment, a complaining party must show:

> ". . . (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." McDonnell Douglas Corp. v. Green, supra, 411 U.S. at 802.

The Supreme Court in McDonnell Douglas noted that due to the varying factual situations arising under Title VII discrimination claims, these four elements were not necessarily applicable to every disparate treatment claim. Thus, courts have held that the fourth element in McDonnell Douglas was satisfied by a showing that the job vacancies were filled with white employees, Crawford v. Western Elec. Company, Inc. (5th Cir. 1980), 614 F.2d 1300. Once a prima facie case is established, an inference arises which is sufficient to sustain the complaining party's burden of proof.

-7-

Where evidence exists establishing a prima facie case, the trier of fact must proceed to the next step in evaluating evidence. This entails determining whether the employer countered the complaining party's prima facie case with probative evidence establishing ". . . some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp. v. Green, supra,/ If no such evidence exists, the complaining party must prevail.
<sup> 411 U.S. at 802.</sup>

If evidence exists which, on its face, shows a legitimate nondiscriminatory reason for the employer's conduct, the trier of fact must resolve the conflict and determine whether complainant has satisfied the burden of proof. In resolving this conflict, the trier of fact may be aided by affirmative evidence of pretext. McDonnell Douglas. The trier of fact may also be assisted by the strength of the inference arising from the complaining party's prima facie case or by its assessment of the credibility of the witnesses at trial. Maine Human Rights Commission v. City of Auburn (1979), ____Me. ____, 408 A.2d 1253.

In the case at bar, the Commission followed the evidentiary standards enunciated in McDonnell Douglas. The Commission determined that Martinez had established a prima facie case of racial discrimination and that the Department had articulated a legitimate, nondiscriminatory reason for rejecting Martinez. The Commission then found that the evidence, as a whole, established unlawful discrimination because the Department's reason for rejecting Martinez was merely a pretext for a discriminatory purpose. In making this finding the Commission considered that Martinez had previously been promoted to permanent status despite her tardiness, absences and personality conflicts.

The District Court, in requiring Martinez to prove that James Greer knew she was black when he rejected her application, erred as a matter of law. The McDonnell Douglas elements, constituting a prima facie case, do not require a showing of scienter on the part of the employer. Requiring proof of such knowledge would effectively destroy the prima facie case rule and the inference of discrimination created by law.

The District Court held that no proof existed showing Greer's adverse decision regarding Martinez to be affected by the racially biased remark of Jackie Hurick. Section 49-2-101(8), MCA, which defines "employer" is silent on whether that term embraces "agents" or those upon whom the employer relies. Since Title VII, 42 U.S.C. §2000e(b) defines employer to include "agents", the federal cases are inapplicable.

The holding by the District Court is contrary to the rationale expressed in Board of Trustees of Billings, Etc. v. State ex rel. Board of Personnel Appeals (1979), ____Mont. ____, 604 P.2d 770, 36 St.Rep. 2289. In that case we held that it was an unlawful act of discrimination for a school board to rely upon a tainted evaluation of a school teacher in reaching a decision not to rehire. Chief Justice Haswell, writing for a unanimous court, made it abundantly clear that it was the taint of the evaluation that created the unlawful discrimination. The school board trustees ". . . relied upon this evaluation, thereby committing the prohibited act of discrimination. They may not insulate themselves by claiming lack of knowledge. If we were not to adopt such a policy a school board could violate a public employee's rights with impunity in almost every instance . . ." (Emphasis supplied.) 604 P.2d at 775.

In the case at bar, James Greer, director of the Department, relied upon an evaluation of Martinez by Jackie Hurick, assistant administrator of the Department. This evaluation was tainted. We hold that Greer's personal knowledge was not material, and that the District Court erred in finding such personal knowledge to be a necessary element of plaintiff's proof.

In reaching its determination to reverse, the District Court reviewed the entire record, and in effect, redetermined the credibility of the witnesses and the weight given to evidence by the Commission. The scope of review of a District Court regarding agency determinations is governed by section 2-4-704, MCA, which provides in pertinent part:

> "(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> ". . .
>
> "(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;"

The effect of this provision is to limit a reviewing District Court to a determination of whether or not substantial evidence exists to support the agency decision.

This Court spoke to that issue in Standard Chemical Manufacturing Company v. Employment Security Division (1980), \_\_\_\_ Mont. \_\_\_\_, 605 P.2d 610,/37 St.Rep. 105,/stating that:
613 108

> ". . . In questions of this kind, where the agency is entrusted and charged with administering the statute and making necessary, initial factual determinations, it is well settled that a reviewing court's function is limited. Where factual determinations are warranted by the record and have a reasonable basis in law, they are to be accepted. It is not the court's function to substitute its own inferences of fact for those of an administrative tribunal or agency, where facts are supported by evidence in the record."

In the case at bar, conflicting evidence existed regarding Martinez' prima facie case and the Department's claimed nondiscriminatory reason for not rehiring Martinez. These conflicts were decided in favor of Martinez by the Commission. For the District Court to review and redecide these conflicts exceeds its statutory authority. As was noted in Standard Chem., 605 P.2d at 614:

> "Where the issue [in controversy] is so close and there is sufficient credible evidence on the record which would allow reaching opposite conclusions, we think that a finding which overturns another as being 'clearly erroneous' is an abuse of discretion. Where the District Court's reviewing function is limited, as in this case, the findings of administrative agencies and tribunals must be sustained where there is sufficient credible evidence in the record."

For the foregoing reasons, the judgment of the District Court must be reversed.

We must now turn to the issue of offsetting interim wages. Although no evidence was presented at the contested hearing in this matter regarding interim wages earned by Martinez, the Commission reduced her backpay award based on information contained elsewhere in its record. The Commission did not specify the source of this information in its findings of fact but merely determined that Martinez had earned $5,229.50 during the duration of this matter.

Section 2-4-612, MCA, sets forth rules regarding procedure for Commission hearings. It provides in pertinent part, that:

> "(1) Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved.
>
> ". . .
>
> "(5) A party shall have the right to conduct cross-examinations required for a full and true disclosure of facts . . .

"(6) Notice may be taken of judicially cognizable facts . . . Parties shall be notified either before or during the hearing or by reference in preliminary reports or otherwise of the material noticed, including any staff memoranda or data. They shall be afforded an opportunity to contest the material so noticed."

In the case at bar, the information used by the Commission to reduce Martinez' backpay award was not noticed to the parties involved thus precluding the appellant from contesting the reduction.

Furthermore, section 2-4-623, MCA, governing the final order handed down by the Commission in contested cases, provides that:

"(1) . . . A final decision shall include findings of fact and conclusions of law, separately stated . . .

"(2) Findings of fact shall be based exclusively on the evidence and on matters officially noticed."

Since the matter of interim wages was not substantiated by evidence at the hearing nor officially noticed to the parties involved, it was error for the Commission to reduce the backpay award of Yvonne Martinez. Therefore, this matter must be remanded for proper determination of the offset, if any.

The District Court order is reversed. The order of the Commission is reinstated except that portion offsetting interim wages. The case is remanded to the Commission with directions to hold a hearing for the purpose of determining what, if any, interim wages should be offset from the award granted.

_____
Justice

We concur:

_____

_____
Justices

-12-

Daniel J Shea

John C Sheehy

Justices