No. 92-504

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

HEARING AID INSTITUTE,

        Petitioner and Appellant,

-vs-

CAROLYN RASMUSSEN and THE MONTANA
HUMAN RIGHTS COMMISSION,

        Respondents and Respondents.



FILED

MAY 18 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                James Arthur Spall, Attorney at Law, Helena,
                Montana
                Robert J. Savage; Habedank, Cumming, Best & Savage
                Sidney, Montana

        For Respondent:

                John F. Lynch, Attorney at Law, Great Falls, Montana
                David Rusoff, Montana Human Rights Commission,
                Helena, Montana

Submitted on Briefs:   March 18, 1993

Decided:   May 18, 1993

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order of the First Judicial District Court, Lewis and Clark County, the Honorable Jeffrey M. Sherlock presiding. The District Court affirmed a Montana Human Rights Commission order that required the appellant, Hearing Aid Institute of Great Falls, Montana (HAI), to pay respondent Carolyn Rasmussen (Rasmussen) $11,300 in front and back pay, plus interest. We affirm.

Rasmussen initiated this action by filing a formal complaint with respondent Human Rights Commission (the Commission) on June 13, 1989. She alleged that HAI had refused to hire her for a telemarketing position because she is physically handicapped. The Commission certified her case for a hearing on April 26, 1990, based on an alleged violation of the Montana Human Rights Act at § 49-2-303(1)(a), MCA, and appointed a hearing examiner.

After a hearing on July 24, 1990, at which both parties were represented by counsel and HAI called several witnesses, the hearing examiner issued findings of fact, conclusions of law, and a proposed order. The proposed order required HAI to pay Rasmussen $12,400 as front and back pay and $5,000 in damages for emotional distress; to cease the discriminatory practice of refusing to hire qualified employees with physical handicaps; and to send a management-level employee to training on the federal Americans with Disabilities Act.

In August 1991, HAI filed exceptions to the hearing examiner's findings of fact and conclusions of law. The Commission heard oral

2

argument on these exceptions on January 23, 1992, and issued a final order on March 6, 1992. The Commission determined that Rasmussen did not meet the legal standard for an award of damages for emotional distress and reduced her award accordingly. It also deducted Rasmussen's interim earnings of $1,100 from the proposed back pay award. In all other respects the Commission adopted the proposed order. HAI petitioned for judicial review on April 3, 1992.

The Commission moved to intervene on May 4, 1992, arguing that Rasmussen did not adequately represent its interest in eliminating employment discrimination. The District Court granted the motion on May 27, making the Commission a party to the action, and on September 4, 1992, it denied HAI's petition and affirmed the Commission's order. This appeal followed.

Rasmussen was born with cerebral palsy, which affects the muscles in her legs. Although she can walk with a cane, she uses a wheelchair in public. She cannot sit in a standard chair because she is only four feet eight inches tall.

At the time of the Commission hearing in July 1990, Rasmussen was twenty-eight years old and married. She was a high school graduate and had completed a one-year vocational course at Weber State College in Utah. Her work experience, before she applied to HAI in January 1989, included telemarketing for the Bon Marche in Ogden, Utah, for about a year; working as a receptionist at Hill Air Force Base in Clearfield, Utah, for a year; telemarketing for two different firms in Ogden, Utah, including eighteen months with

3

Omni Hearing Aid in 1984-85; and telemarketing for Marketing America in Great Falls, Montana, for a few days.

On or about January 2, 1989, Rasmussen applied for a telemarketing job with HAI in Great Falls, Montana. The work involved calling senior citizens and scheduling hearing test appointments for people with hearing problems. Rasmussen was interviewed by HAI's telemarketing manager, Brian Thomas. Thomas testified at the hearing that he did not ask Rasmussen to complete an employment application, because no copies were available at the time, and that he did not ask her to provide a writing sample. He also testified that he did not ask her for the names and addresses of her previous employers.

At the conclusion of the interview, Thomas said, he decided but did not tell Rasmussen that "she would not be suitable due to the fact that her voice carryover when we talk to hearing impaired people would be inadequate."

Rasmussen testified that Thomas told her she was hired and would start in about two weeks, after HAI installed a new telephone system. She waited two weeks, she said, then called HAI every other day trying to determine her starting date. She testified that she left messages for Thomas, who did not return her calls. Finally she spoke to Thomas, who told her the new telephones were not installed yet. Later, she spoke to him again. She testified that he told her then that HAI was not hiring anyone, but Thomas testified that he told Rasmussen "they didn't have anything for her at this time." Nevertheless, HAI continued to advertize for

4

telemarketers throughout the first half of 1990.

The Commission concluded that Rasmussen had established a prima facie case of employment discrimination. Although HAI attempted to rebut Rasmussen's prima facie case by articulating a legitimate, non-discriminatory reason for not hiring her, the Commission found that this reason--that Rasmussen's voice was too soft--was merely a pretext for discrimination. The District Court agreed, and affirmed the Commission's award of damages.

On appeal, HAI challenges the Commission's conclusion that Rasmussen was qualified for the telemarketing position and raises numerous subsidiary issues, which we have compressed and rephrased as follows:

1. The District Court erred in concluding that Rasmussen was qualified for telemarketing and therefore erred in concluding that she had established a prima facie case of employment discrimination.

2. The District Court erred in concluding that an employer may not justify rejecting an applicant based on evidence obtained after it decided to reject the applicant.

3. The District Court erred in concluding that the Commission applied the correct test for employment discrimination and not the one used in Price Waterhouse v. Hopkins (1989), 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268.

4. The District Court erred in concluding that HAI had not shown that it would not have hired Rasmussen in the absence of discrimination.

5. The District Court erred in concluding that Rasmussen was entitled to front pay.

6. The District Court erred in concluding that evidence of other claims that Rasmussen pursued contemporaneously was not admissible as proof of motive and intent or failure to mitigate.

Judicial review of an administrative agency decision in a contested case is governed by § 2-4-704, MCA. Section 2-4-704(2)

5

provides that an agency's decision may not be reversed or modified unless substantial rights of the appellant have been prejudiced because the agency exceeded its authority, abused its discretion, made clearly erroneous findings of fact, or interpreted the law incorrectly. Although we applied an "abuse of discretion" standard to an agency's conclusions of law in two recent Human Rights Commission cases--Johnson v. Bozeman School Dist. No. 7 (1987), 226 Mont. 134, 734 P.2d 209; P.W. Berry Co., Inc. v. Freese (1989), 239 Mont. 183, 779 P.2d 521--we now apply the standard adopted in Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603: "In reviewing conclusions of law, our standard of review will be merely to determine if the agency's interpretation of the law is correct, instead of applying the inappropriate abuse of discretion standard."

All of the Commission rulings that HAI challenges on appeal, as confirmed by the District Court, are essentially conclusions of law. We review the challenged conclusions of law under the standard set forth in Steer, Inc.

As the framework for this review, we use the three-stage test for employment discrimination articulated by the United States Supreme Court in McDonnell-Douglas Corp. v. Green (1973), 411 U.S. 492, 93 S.Ct 1817, 36 L.Ed.2d 668, and adopted by this Court in Martinez v. Yellowstone County Welfare Dep't (1981), 192 Mont. 42, 626 P.2d 242. Both the Commission and the District Court applied this test correctly in reaching their conclusions.

In the first stage of this test, the plaintiff must establish

6

a prima facie case of discrimination, by proving that she is a member of a protected class; that she applied for and was qualified for a position; that she was rejected despite her qualifications; and that the position had remained open and the employer had continued to accept applications from persons with comparable qualifications. Establishing the prima facie case creates a presumption that the employer unlawfully discriminated against the plaintiff. Texas Dep't of Community Affairs v. Burdine (1980), 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216.

In the second stage of the McDonnell-Douglas test, if the plaintiff has established a prima facie case, the burden shifts to the employer to rebut the presumption of discrimination by producing a legitimate, non-discriminatory reason for the employee's rejection. If the employer clearly sets forth non-discriminatory reasons for rejection, through admissible evidence, the plaintiff's case is rebutted. Burdine, 450 U.S. at 254-255.

After the employer has produced a legitimate, non-discriminatory reason for the rejection, the plaintiff has an opportunity to prove that this reason is only a pretext for discrimination. Pretext may be proved directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

I

Did the District Court err in concluding that Rasmussen was qualified for telemarketing and therefore that she had established

7

a prima facie case of employment discrimination?

Under McDonnell-Douglas, Rasmussen must show that she was qualified for the job for which she was rejected. On the basis of her testimony concerning her previous telemarketing experience, the Commission concluded that she was qualified for the telemarketing opening at the Hearing Aid Institute, stating that:

> The uncontroverted testimony of Rasmussen that she previously had been employed as a telemarketer on several occasions establishes that she was "qualified" when she applied for a similar position with HAI.

The Commission correctly distinguished Johnson, in which the Bozeman School District defeated an employment discrimination claim by showing that the claimant was not qualified for a teaching position. Unlike the school district, HAI had not established minimum hiring standards or developed any screening procedures when Rasmussen applied for the job and therefore cannot show that Rasmussen did not meet minimum qualifications.

HAI argues that Rasmussen's performance in an impromptu writing exercise during her hearing demonstrates her lack of qualifications. Rasmussen's lawyer asked her to "do a little writing" to illustrate what she had done in previous telemarketing jobs. Rasmussen suggested that she write her name, address and telephone number, as these were items she was required to write as a telemarketer, but HAI's lawyer suggested that she write, instead, "A quick brown fox jumped over the lazy brown dog." Rasmussen asked to have the sentence repeated several times before she completed the demonstration. The Commission adopted the hearing examiner's assessment of this exercise in its findings of fact, as

8

follows:

> Her final product omits articles and appropriate verb tense, but in other respects, is accurate and legible. . . . Although it took Rasmussen a minute or more to complete the demonstration, little weight was afforded to the time lapse or precision of her transcription. Thomas did not observe Rasmussen's writing ability during her interview, nor did he ask her to demonstrate how efficiently she could record information by hand. Furthermore, the writing exercise was not representative of the type of information a telemarketer usually records.

The District Court determined that "when one considers the tense atmosphere that often times accompanies hearings," the Commission's finding that Rasmussen was qualified as a telemarketer was not clearly erroneous. We agree. The record contains substantial credible evidence that Rasmussen was qualified to schedule hearing test appointments.

II

Did the District Court err in concluding that an employer may not justify rejecting an applicant based on evidence obtained after it decided to reject the applicant?

At the hearing on July 24, 1990, HAI attempted to introduce, as evidence that Rasmussen was not qualified for employment as a telemarketer, testimony by Maria Roberts, who was office manager of Marketing America when Rasmussen worked there briefly in 1986. Roberts testified that Rasmussen's supervisor at Marketing America let her go because "she could not dial the telephone. It took her quite a long time to dial one number. She also had trouble . . . writing that quickly--the way the customer talked--and writing it legibly."

9

When Rasmussen's supervisor terminated her employment, she went to the owner, who offered to give her another chance. After another week, Roberts testified, Rasmussen quit because she "could not handle the position."

Rasmussen herself testified that she found the atmosphere at Marketing America very stressful: "Nobody would talk to me. . . . They were very rude with me. So I quit." She also said that her supervisor let her go initially because he had not been authorized to hire her.

As HAI had not asked Rasmussen for names and addresses of previous employers, and had not checked her previous employment record before deciding not to hire her, the hearing examiner ruled that Roberts' testimony was admissible only for the purpose of impeaching Rasmussen's own testimony regarding her qualifications, and not for the purpose of proving that Rasmussen was not qualified when HAI rejected her.

The Commission relied on Mantolete v. Bolger (9th Cir. 1985), 767 F.2d 1416, 1424, to support the statement that "an employer may not rely upon evidence obtained after its decision to reject an applicant to justify rejection of the applicant." HAI argues that Mantolete allows a defendant to rely on such evidence to rebut the plaintiff's prima facie case of discrimination, and that in excluding Roberts' testimony that Rasmussen was not qualified, the Commission denied HAI the right to a valid defense.

The relevant holding in Mantolete follows:

Although it is questionable whether the Postal Service could justify its refusal to hire Mantolete based on

10

evidence obtained after its decision to reject her application, the admissibility of post-decision evidence is not necessarily forbidden for all purposes. . . . Thus, the evidence was admissible to rebut the appellant's claim that she was qualified for the position, but was not admissible to enlarge the basis upon which the employer relied to reject the appellant at the time that decision was made. Consequently, <u>if the evidence is admitted to rebut the prima facie showing of qualification for the position, and such evidence is determined by the trier of fact to be insufficient to rebut this aspect of the plaintiff's prima facie case, the evidence cannot further be used to justify the plaintiff's rejection</u>.

767 F.2d at 1424 (citation omitted; emphasis added).

Roberts' testimony was admitted to impeach Rasmussen's testimony rather than to rebut her prima facie case, but the hearing examiner treated it as though it were rebuttal testimony. She concluded that Roberts' testimony should be "afforded little weight" because she was not present when Rasmussen's supervisor fired her, or when Rasmussen quit later.

In effect, this is a determination that Roberts' testimony was insufficient to rebut Rasmussen's prima facie case of discrimination. Having failed to rebut Rasmussen's prima facie case with Roberts' testimony, HAI could not use the same testimony as evidence of a legitimate, non-discriminatory reason for rejecting Rasmussen. <u>Mantolete</u>, 767 F.2d at 1424.

### III

Did the District Court err in concluding that the Commission applied the <u>McDonnell-Douglas</u> test for employment discrimination and not the one used in <u>Price Waterhouse v. Hopkins</u>?

HAI argues that under <u>Johnson</u> it need not prove that Rasmussen's lack of qualifications--a legitimate, non-

11

discriminnatory reason for refusing to hire her--was the _actual_ reason for rejection, and that the Commission therefore should have found that Roberts' testimony did rebut Rasmussen's prima facie case of discrimination.

In _Johnson_ we said:

> If the employer is able to demonstrate a _legitimate, nondiscriminatory reason_ for not hiring the complainant, even though that may not have been the actual reason for the rejection, then the plaintiff's prima facie case of discrimination is rebutted.

734 P.2d at 212, citing _Burdine_, 450 U.S. at 254. In a footnote to its conclusions of law, the Commission described this language as "misleading in light of the more recent U.S. Supreme Court decision in _Price Waterhouse v. Hopkins_." _Price Waterhouse_, the Commission wrote, "illustrates that even in a mixed motive case the asserted legitimate reason for an employment decision must be present at the time the decision is made, i.e., the reason given for not hiring the complainant must have been one of the actual reasons for the rejection."

HAI contends that in this footnote the Commission "adopted" _Price Waterhouse_ "in derogation of Montana law," Montana law being the _McDonnell-Douglas_ test as adopted in _Martinez_ and applied in _Johnson_. HAI is incorrect. As the District Court pointed out, the Commission in fact applied the _McDonnell-Douglas_ test rigorously, though not to the issue of Roberts' testimony. Instead, the Commission found that HAI's "legitimate, non-discriminatory reason" was Brian Thomas' concern with the quality of Rasmussen's voice, which Thomas offered as the reason for not hiring her.

12

Because HAI did meet its burden in the second stage of the McDonnell-Douglas test by producing a non-discriminatory reason for rejecting Rasmussen, the Commission moved to the third stage of the test. At this stage, Rasmussen had to prove by a preponderance of the evidence that this reason was only a pretext for discrimination. Johnson, 734 P.2d at 213; Crockett v. City of Billings (1988), 234 Mont. 87, 95, 761 P.2d 813, 818. Pretext may be proved indirectly, by showing that the employer's explanation is unworthy of belief. Burdine, 450 U.S. at 256. The Commission found that Thomas' alleged concern was not worthy of belief and concluded that Rasmussen had met her burden of proof at this stage of the test; that is, it concluded that voice quality was a pretext for not hiring her. "If Thomas, in fact, believed that Rasmussen's voice was too soft to be a telemarketer," the Commission wrote, "he could have told her that and avoided guises such as 'the phones haven't been installed yet. . . .'" The District Court affirmed this conclusion, noting that it could not properly re-weigh evidence given by witnesses.

We hold that substantial credible evidence supports the Commission's finding that a discriminatory motive was more likely to have motivated HAI's rejection of Rasmussen, and that its conclusion that the proferred nondiscriminatory reason was merely a pretext is not incorrect.

IV

Did the District Court err in concluding that HAI did not show that it would not have hired Rasmussen in the absence of

13

discrimination?

HAI argues that it would not have hired Rasmussen even in the absence of discrimination, and that Rasmussen therefore is not entitled to damages. HAI relies on Nanty v. Barrows Co. (9th Cir. 1981), 660 F.2d 1327, in which the Ninth Circuit held that:

> Where a job applicant has proved unlawful discrimination in the employment process, he must be awarded full relief, i.e., the position retroactively, unless the "defendant shows by clear and convincing evidence that even in the absence of discrimination the rejected applicant would not have been selected for the open position."

660 F.2d at 1333, quoting Marotta v. Usury (9th Cir. 1980), 629 F.2d 615, 618.

The District Court found no evidence in the record to support HAI's contention that it would not have hired Rasmussen in the absence of discrimination. The testimony of HAI's telemarketing manager, Thomas, established that when he interviewed Rasmussen he made no effort to check her references, evaluate her skills, or otherwise determine whether she was qualified for the job. In the absence of any evidence, let alone clear and convincing evidence on this point, the District Court concluded correctly that Rasmussen is entitled to full relief, i.e., back pay. HAI does not dispute the amount of back pay awarded.

V

Did the District Court err in concluding that Rasmussen was entitled to front pay?

The Commission awarded Rasmussen one year of "front pay," based on its finding that "Rasmussen felt very uncomfortable about

14

HAI as a consequence of these proceedings and its demonstrated treatment, and attitude toward, her" and was "not interested in reinstatement." Citing Thorne v. City of El Segundo (9th Cir. 1986), 802 F.2d 1131, 1137, the Commission stated in its conclusions of law that "front pay is an appropriate remedy when it would be inappropriate to order reinstatement of the charging party due to hostility or antagonism between the parties."

HAI correctly points out that in Thorne the Ninth Circuit actually held that front pay is appropriate only when "excessive hostility or antagonism" exists; it remanded the case to the district court to make specific findings on whether the plaintiff, Thorne, would encounter excessive hostility if the City of El Segundo reinstated her as a police officer in the department where she had previously worked as a clerk-typist. Here, the Commission made no specific findings as to whether Rasmussen would encounter "excessive hostility" if she became a telemarketer at the Hearing Aid Institute but it did conclude that one year of front pay was reasonable "considering the antagonism between the parties."

The District Court concluded that substantial credible evidence supported the Commission's award of front pay and that "[u]nder these circumstances, it cannot be said that it would be appropriate for Rasmussen to obtain reinstatement with HAI."

In Fadhl v. City & County of San Francisco (9th Cir. 1984), 741 F.2d 1163, 1167 (cited as authority for the definition of front pay in Thorne), the Ninth Circuit did not insist on "excessive hostility" but instead held that "[a]n award of front pay is made

in lieu of reinstatement when the antagonism between employer and employee is so great that reinstatement is not appropriate." The District Court's finding in the case before us is consistent with this holding. We conclude that Rasmussen was entitled to front pay.

## VI

Did the District Court err in concluding that evidence of other claims that Rasmussen pursued contemporaneously was not admissible as proof of motive and intent or failure to mitigate?

The hearing officer refused to allow HAI to show that Rasmussen had filed other discrimination claims. HAI argued that this evidence would go to show motive, intent, or preparation, but the District Court found that it would be irrelevant to the question of whether HAI discriminated against Rasmussen. We agree. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, M.R.Evid. Evidence that Rasmussen filed other discrimination claims does not make more or less probable any material fact concerning HAI's motive for rejecting her for employment.

The hearing officer also refused to hear testimony by Rich Pavlonis, owner of Omni Marketing, Inc., which was the object of a separate discrimination complaint by Rasmussen. As part of the conciliation process for that complaint, Omni had offered Rasmussen a job in November 1989. The hearing officer excluded Pavlonis'

16

testimony on the basis of 24.9.226, ARM, which makes statements made in the course of a conciliation offer inadmissible in any hearing concerning the complaint. The District Court concluded that this rule does not prevent admission of testimony about a conciliation offer made in a different case. It upheld the exclusion, however, based on our holding in Tribby v. Northwestern Bank of Great Falls (1985), 217 Mont. 196, 704 P.2d 409. There, we held that:

> An offer to compromise is not admissible when made in an attempt to effect a settlement. [The defendant bank] argues the offer is admissible to show that Tribby failed to mitigate damages . . . . We are not persuaded by the contention that refusing an offer to settle is a failure to mitigate damages . . . . Admitting this evidence would go against the basic policy of Rule 408, M.R.Evid., which is to encourage compromises and settlement of disputes.

704 P.2d at 417-418 (citation omitted).

Admitting or excluding evidence is within the discretion of the trial court or, in this case, the Commission. Weber v. State (1992), 253 Mont. 148, 151, 831 P.2d 1359, 1363. HAI alleged error on the part of the hearing officer, but it offered the District Court no evidence that she abused her discretion, nor did it present any authority showing that Omni's offer of employment should be admissible to prove failure to mitigate damages.

Affirmed on all issues.

John Conway Harrison
Justice

17

We concur:

_____
Karla M. Gray

_____
William E. Hunter

_____
Jim Rice

_____
Justices

18

May 18, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

James Arthur Spall
Attorney at Law
#2 No. Last Chance Gulch
Helena, MT  59624

Robert J. Savage
Habedank, Cumming, Best & Savage
P.O. Box 1250
Sidney, MT  59270

John F. Lynch
Attorney at Law
P.O. Box 2265
Great Falls, MT  59403

David Rusoff, Legal Counsel
Montana Human Rights Commission
P.O. Box 1728
Helena, MT  59624

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy