NO. 94-350

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

GREGG A. HAFNER,

      Plaintiff and Appellant,

  -vs-

CONOCO INC., a Delaware corporation
authorized to do business in Montana,

      Defendant and Respondent.

FILED

DEC 16 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Michael G. Eiselein; Lynaugh, Fitzgerald,
          Eiselein & Eakin, Billings, Montana

      For Respondent:

          David A. Veeder; Veeder Law Firm, Billings,
          Montana

Submitted on Briefs: November 3, 1994

Decided: December 16, 1994

Filed:

_____
               Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Gregg Hafner (Hafner) appeals from a summary judgment entered by the Thirteenth Judicial District Court, Yellowstone County, in favor of defendant Conoco, Inc. (Conoco) on his claim of employment discrimination. We reverse and remand for further proceedings.

The issue is whether the District Court erred in granting summary judgment for Conoco.

In July of 1981, Hafner injured his right knee while working as a carpenter at Colstrip, Montana. In September of that year, he underwent a surgical arthroscopy and arthrotomy of the knee. He returned to work in November of 1981, but had to quit working because of pain and swelling in the knee. In February 1982, a second surgery was performed, in which bone was grafted from Hafner's hip to the knee.

After the second surgery, Hafner was rated as having a 20% permanent physical impairment, and his treating physician did not release him to resume his employment as a carpenter. Hafner enrolled in college, obtained a Bachelor of Science degree in elementary education, and taught school for six years.

In February 1991, Hafner inquired by letter about job opportunities with Conoco. He was interviewed by Conoco's personnel director in Billings, Montana. On March 4, 1991, he submitted a written application for employment. He took a written employment test. On March 21, 1991, Hafner was offered a "probationary assignment" by Conoco in a "Helper" position at its

Billings refinery, with regular full-time employment conditioned upon the successful completion of a pre-employment physical and drug screening at the Billings Clinic.

On March 28, 1991, Hafner underwent a physical examination at the Billings Clinic. The examining physician, Dr. William Shaw, noted he would "[e]xpect problems [with Hafner's knee] with climbing and squatting." Dr. Shaw wrote that Hafner had degenerative joint disease with patellofemoral arthritis, a progressive condition which would accelerate with repetitive climbing, squatting and carrying. In a letter written on July 30, 1991, Dr. Shaw noted that progression of Hafner's condition would cause him physical harm.

Conoco scheduled a second examination of Hafner by his own physician, Dr. James Scott. Dr. Scott opined that the Conoco "Helper" job, which involved climbing with some kneeling and squatting, was likely to aggravate Hafner's knee problem. The reports by Drs. Shaw and Scott were sent to a Conoco office in Oklahoma.

A reviewing physician at the Oklahoma Conoco office instructed the Billings office that Hafner's job assignment should be restricted to jobs involving minimal climbing, squatting, and kneeling. The Billings personnel director then decided that Hafner would not be considered further for probationary employment, reasoning that the necessary medical restrictions would impair his ability to perform his basic duties in a safe manner and his position could not be modified to accommodate those restrictions.

3

Hafner filed a charge of discrimination with the Montana Human Rights Commission in November, 1991, alleging that Conoco discriminated against him on the basis of a handicap. Hafner maintains he has led an active and symptom-free life during the ten years since his knee surgery. Prior to his knee injury, he worked at the Exxon refinery in Billings, and he feels' that he knows what the work involves and is capable of performing it.

Because it was unable to hold a contested case hearing within the time allowed, the Human Rights Commission issued a right to sue letter in March of 1993, as required under § 49-Z-509, MCA. Hafner then filed his complaint in District Court.

On cross-motions for summary judgment, the District Court determined that Hafner had failed to prove he was physically handicapped or was "regarded as" physically handicapped under § 49-2-101(15)(a), MCA. The court further found that Hafner had failed to prove that he was qualified for the Conoco job. The court also found that Conoco "sustained its burden of proving non-discriminatory reasons for not hiring Hafner." The District Court entered summary judgment in favor of Conoco. On appeal, Hafner asks this Court to find as a matter of law that Conoco "regarded" him as physically disabled, and to reverse and remand for a trial on the remaining issues of fact.

Did the District Court err in granting summary judgment for Conoco?

Summary judgment is proper when the record discloses no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. This Court reviews a ruling on a motion for summary judgment under the same standard as that used by the district court. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214.

The Montana Human Rights Act prohibits discrimination in hiring or employment against persons with a physical disability. Section 49-2-303, MCA. In Martinez v. Yellowstone County Welfare Dept. (1981), 192 Mont. 42, 626 P.2d 242, this Court adopted the three-stage test for employment discrimination articulated by the United States Supreme Court in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. Under the first stage of that test, a job applicant must establish four elements in order to make a prima facie case of discrimination. A person alleging discrimination must show:

> 1. The person is a member of the class protected by the statute;
>
> 2. the person applied for and was qualified for the position;
>
> 3. the person was rejected despite being qualified for the job; and
>
> 4. the position remained open and the employer continued to accept applications from persons with comparable qualifications.

Hearing Aid Institute v. Rasmussen (1993), 258 Mont. 367, 372, 852 P.2d 628, 632. Establishing this prima facie case "creates a presumption that the employer unlawfully discriminated against the plaintiff." Rasmussen, 852 P.2d at 632.

The District Court determined that Hafner failed to establish

the first **element** of the prima facie case. under § 49-2-101(15)(a), MCA, "physical or mental disability" means a physical or mental impairment that substantially limits one or more of a person's major life activities, a record of such an impairment, or a condition "regarded as" such an impairment. Hafner asserts that Conoco regarded his knee condition as such an impairment. On that basis, he maintains that he is a member of the class protected under the Montana Human Rights Act.

We have not heretofore interpreted the "regarded as" provision of § 49-2-101(15)(a), MCA. However, the Montana Human Rights Act is patterned after the federal Rehabilitation Act of 1973. We have held that, in this circumstance, "reference to pertinent federal case law is both useful and appropriate." McCann v. Trustees, Dodson School Dist. (1991), 249 Mont. 362, 364, 816 P.2d 435, 437. We look, therefore, to federal case law.

The Equal Employment Opportunity Commission (EEOC) is charged with federal employers' compliance with the federal Rehabilitation Act. The EEOC defines the words "is regarded as having an impairment" in the federal statute to mean:

> (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; or (3) has none of the [above-described] impairments . . but is treated by an employer as having such an impairment.

29 C.F.R. § 1613.702(e). The EEOC defines "major life activities" to include "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, and working." 29 C.F.R. §

6

1613.702(c). The EEOC's construction is accorded deference by the federal courts because of active Congressional participation in the administrative process and the resulting correlation between the regulation and the legislative purpose. Forrisi v. Bowen (4th Cir. 1986), 794 F.2d 931, 934.

An employer does not necessarily regard an employee as handicapped simply by finding the employee incapable of satisfying the demands of a particular job. Forrisi, 794 F.2d at 934-35.

> The statutory reference to a substantial limitation indicates instead that an employer regards an employee as handicapped in his or her ability to work by finding the employee's impairment to foreclose generally the type of employment involved.

Forrisi, 794 F.2d at 935. In Forrisi, the Fourth Circuit ruled that the record demonstrated the employer did not regard an employee's acrophobia (fear of heights) as a "substantial limitation" in employability, but rather as a condition rendering the employee unsuited for one position. Forrisi, 794 F.2d at 935.

Hafner argues that he was "regarded as" physically disabled because Conoco viewed his physical impairment as a limitation of his overall ability to work in general. The Conoco personnel director testified by deposition that he regarded Hafner as "restricted . in basic job functions that would limit his performance of work or could limit his performance of work."

Under the federal standard, which we adopt, and based on the testimony of the Conoco personnel director, we conclude that Hafner has established that Conoco "regarded" him as physically disabled. We hold, therefore, that the District Court erred in determining

that Hafner failed to establish the first element of a prima facie case of employment discrimination. We further hold that Hafner has established as a matter of law that Conoco regarded him as physically disabled within the meaning of § 49-2-101(15)(a), MCA.

The District Court also found that Hafner did not prove a portion of the second element of the prima facie case: that he was qualified for the position with Conoco. Again, we look to federal case law for guidance regarding this element.

> Taken literally, "otherwise qualified" could be defined to include those persons who would be able to meet the particular requirements of a particular program "but for" the limitations imposed by their handicaps. The Supreme Court, however, expressly disapproved of such an interpretation because of the absurd results that would be produced. "Under such a literal reading, a blind person possessing all the qualifications for driving a bus except sight could be said to be 'otherwise qualified' for the job of driving. Clearly, such a result was not intended by Congress." The Supreme Court instead defined an otherwise qualified person as "one who is able to meet all of a program's requirements in spite of his handicap."

Chandler v. City of Dallas (5th Cir. 1993), 2 F.3d 1385, 1393; cert. denied 114 S.Ct. 1386 (1994).

In the present case, Hafner's initial qualifications for the position are demonstrated by Conoco's offer of probationary employment to him. Hafner's deposition testimony establishes that he has done refinery work before and that he understands, and feels that he is capable of performing, the activities required. His testimony about the physical activities of which he is capable is undisputed. In his deposition, he testified that he is able to walk eighteen holes of golf, he cross-country skis with no problem, he finished the basement and climbs up on the roof of his house,

and he "can do everything . short of . . . kneeling down and walking on my knees for eight hours." We conclude that Hafner established the second element of his prima facie case, that he applied and was qualified for the position.

Having held that the District Court erred in ruling that Hafner failed to establish the first two **elements** of a prima facie case of employment discrimination, we continue with the analysis of an employment discrimination case under <u>McDonnell Douglas</u>. After the plaintiff establishes a prima facie case, the burden then shifts to the employer to rebut the presumption of discrimination by producing **a legitimate,** non-discriminatory reason for the failure to hire. <u>Rasmussen,</u> **852** P.2d at 632.

The District Court stated:

> [T]he reasonable demands of the physical labor position for which Hafner was applying at Conoco (which included frequent squatting, kneeling, climbing, lifting, standing and sitting) required a physical handicap distinction.

The court determined that Conoco "sustained its burden of proving non-discriminatory reasons for not hiring Hafner."

Like the issues discussed above, the extent to which a risk of future injury to the job applicant constitutes a non-discriminatory reason for a failure to hire has not been specifically addressed by this Court. However, in <u>Rasmussen</u>, we cited with approval Mantolete v. Bolger (9th Cir. 1985), 767 F.2d 1416. In <u>Mantolete,</u> the Ninth Circuit discussed the level to which risk of future **injury** must rise in order to stand as a non-discriminatory reason disqualifying an applicant from employment. The court stated:

> [I]n some cases, a job requirement that screens out

qualified handicapped individuals on the basis of possible future injury is necessary. However, we hold that in order to exclude such individuals, there must be a showing of a reasonable probability of substantial harm. Such a determination cannot be based merely on an employer's subjective evaluation or, except in cases of a most apparent nature, merely on medical reports. The question is whether, in light of the individual's work history and medical history, employment of that individual would pose a reasonable probability of substantial harm.

Such an evaluation necessarily requires the gathering of substantial information by the employer. This, we believe, was Congress' intent in enacting the Rehabilitation Act of 1973; that is, to prevent employers from refusing to give much needed opportunities to handicapped individuals on the basis of misinformed stereotypes.

.

In applying this standard, an employer must gather all relevant information regarding the applicant's work history and medical history, and independently assess both the probability and severity of potential injury. This involves, of course, a case-by-case analysis of the applicant and the particular job.

Mantolete, 767 F.2d at 1422-23.

Conoco argues that the Mantolete standard does not apply in Montana because of the language of § 49-4-101, MCA:

It is unlawful to discriminate, in hiring or employment, against a person because of the person's physical disability. There is no discrimination when the nature or extent of the disability reasonably precludes the performance of the particular emolyment or when the particular employment may subject the person with a disability or that person's fellow employees to ohysical harm. [Emphasis supplied.]

Conoco claims the above standard, that the particular employment "may" subject the person or fellow employees to physical harm, is a broader definition of "non-discriminatory reasons" than the standard under the federal regulations, which is that the person "can perform the essential functions of the position in question

10

without endangering the health and safety of the individual or others."   29 C.F.R. § 1613.702(f).   Conoco argues it has established that employment in an entry-level position at its Billings plant "may" subject Hafner to physical harm.   In particular, it cites Dr. Shaw's opinion that progression of Hafner's condition would cause him physical harm.

In light of the statutory language of § 49-4-101, MCA, we must agree with Conoco that the Mantolete standard concerning risk of injury does not control as to whether a non-discriminatory reason has been articulated for a failure to hire in an action under the Montana Human Rights Act.   We conclude that the District Court did not err in ruling that Conoco has articulated a non-discriminatory reason for failing to hire Hafner.

Once the plaintiff in an employment discrimination case has established a prima facie case of discrimination, and the employer has rebutted the presumption of discrimination by producing a legitimate, non-discriminatory reason for the employee's rejection, the third stage of the McDonnell Douglas test is reached.   In that stage, the plaintiff has an opportunity to prove that the given reason is only a pretext for discrimination.   Rasmussen, 852 P.2d at 632.   Pretext may be proven directly or indirectly, by showing that the employer's proffered explanation is unworthy of credence. Rasmussen, 852 P.2d at 632.

In this case, Hafner points out that Conoco's Billings personnel director rejected him based solely upon his interpretation of the medical reports and recommendations.   The medical

11

reports themselves do not state that Hafner is incapable of doing the job for which he applied. Nor did the personnel director speak to either of the doctors or to Hafner about his knee.

Based on the medical reports, the safety concerns raised by the personnel director must logically relate to Hafner's own safety and the potential for aggravation of his knee condition. However, because Hafner's knee condition is progressive, the passage of time alone will cause him physical harm. Therefore it could be argued that any employment "may" subject Hafner to physical harm. Under that argument, any denial of employment to a person with a progressive condition would be non-discriminatory, even though the person was capable of performing the job. Although the language of § 49-4-101, MCA, could conceivably be read that broadly, we conclude that such a broad reading would gut the purpose of the Montana Human Rights Act. Therefore, while we have concluded that the Mantolete standard for risk of injury does not control as to establishment of a non-discriminatory reason for failure to hire in actions filed under the Montana Human Rights Act, we conclude that the Mantolete standard provides useful guidance in relation to pretext. We hold that Hafner has raised a genuine issue of material fact as to whether the reason given for the withdrawal of the offer of employment was a mere pretext.

In summary, we have concluded that the District Court erred in determining that Hafner failed to establish a prima facie case of employment discrimination. We have held that Hafner has established, as a matter of law, that he is a member of the protected

12

class. We have further concluded that, although the District Court was correct in determining that Conoco has set forth a non-discriminatory reason for rejecting Hafner, Hafner has established a genuine issue of material fact as to whether Conoco's withdrawal of the job offer was pretextual. We hold, therefore, that the District Court erred in granting summary judgment for Conoco. We reverse and remand for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Justice Terry N. Trieweiler specially concurring.

I concur with the result of the majority's decision.

I disagree with the majority's conclusion that the language in § 49-4-101, MCA, is different in any practical respect from 29 C.F.R. § 1613.702(f). Both provisions permit an employer to consider whether a person's disability would subject that person or fellow workers to harm in the work place. Therefore, I see no reason not to follow *Mantolete v. Bolger* (9th Cir. 1985), 767 F.2d 1416. I would require the same showing in Montana that is required under federal law where an employer denies employment based on an allegation that an applicant's disability creates a risk of harm to him or herself or to others.

Based on the *Mantolete* standard concerning risk of injury, I would conclude that Conoco has not established as a matter of law a nondiscriminatory reason for failing to hire Hafner. I otherwise concur with the majority opinion and would reverse the judgment of the District Court.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing concurring opinion.

_____
Justice

14

December 16, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the. following named:

Michael G. Eiselein
LYNAUGH, FITZGERALD, EISELEIN & EAKIN
Bbx 1729
Billings MT 59103-1729

David A. Veeder
VEEDER LAW FIRM
Box 1115
Billings MT 59103-1115

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *N. Gallagher*
**Deputy**