No. 96-249

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

LAWRENCE E. WALKER,

      Plaintiff and Appellant,

  v.

MONTANA POWER COMPANY,

      Defendant and Respondent.

FILED

OCT 08 1996

_d Smith
_____ OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Michael J. San Souci and Peter B. Ohman, Law Office
of Michael J. San Souci, Bozeman, Montana

      For Respondent:

          W. Wayne Harper, Butte, Montana

Submitted on Briefs:  August 15, 1996

Decided:  October 8, 1996

Filed:

_____
Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

In this action, Lawrence Walker alleges that he was constructively discharged from employment with Montana Power Company (MPC) and that, in discharging him, MPC violated the federal Americans with Disabilities Act (ADA) and the Montana Human Rights Act. A jury in the Eighteenth Judicial District Court, Gallatin County, found for MPC. Walker appeals. We affirm.

The issues are:

1. Does substantial evidence support the jury's finding that Walker was not a disabled person?

2. Does substantial evidence support the jury's finding that Walker was not constructively discharged from his employment with MPC?

3. Did the District Court err in refusing to set aside the jury's verdict?

Lawrence Walker began working as a lineman for MPC in 1969. In 1987, he was promoted to City Foreman of the Bozeman, Montana, division of MPC.

In 1991, seven subforemen working immediately under Walker complained to Walker's supervisor about Walker's supervisory practices over workers on the line crews. Walker's supervisors investigated the complaints and concluded that, despite their efforts to coach him on promoting a team spirit with his subordinates, Walker was not communicating well with the crews he supervised. They realigned his job duties and responsibilities.

2

Walker's salary remained the same, but he had different supervisory responsibilities.

Walker's co-workers continued to report problems with his job performance. Additionally, other problems arose with his work performance. He was involved in two accidents with company vehicles. On several occasions, his company vehicle was observed parked at the Montana State University (MSU) gym on company time. Finally, the local MPC budget for tree trimming, for which he was responsible, was overspent for 1991. Walker's supervisor gave him written "reminders," or warnings, concerning the vehicle accidents and use of the MSU gym while on company time.

On April 8, 1992, MPC demoted Walker to the title and pay of lineman. Beginning on that date, Walker took eleven months of medical and personal leave. From April 15, 1992, through May 11, 1992, he obtained medical leave due to abdominal pain and sleep disorder. MPC extended this leave through September 11, 1992, after Walker submitted doctors' reports of headaches, weight loss, gastritis, back pain, vertigo, and, in August, a fall causing a rib fracture.

Walker continued on sick leave until October 23, 1992, without submitting further written documentation of reason. On that date, he presented his supervisor at MPC with a doctor's written statement that he was totally disabled, for unspecified reasons, through the end of November.

Walker then requested and was granted a three-month period of unpaid personal leave from December 1, 1992, to March 1, 1993. He

3

did not return to work on March 1. His supervisor at MPC asked him by letter to return by March 3 or risk being considered to have voluntarily resigned. When Walker did not appear for work as scheduled on March 3, MPC terminated him from employment. MPC's written reason for the termination was that Walker "[r]efused to work at a Lineman position."

In his complaint filed in District Court, Walker initially set forth ten counts against MPC and two of his supervisors there. The District Court ordered the ten counts reduced to two: wrongful discharge and disability discrimination. The court dismissed the two supervisors as defendants, leaving MPC as the sole defendant.

A five-day jury trial ended in a defense verdict. The jury found that Walker was not a disabled person and had not been constructively discharged from employment with MPC. Walker appeals.

## ISSUE 1

Does substantial evidence support the jury's finding that Walker was not a disabled person?

It is up to the jury to determine the credibility of witnesses. Cechovic v. Hardin & Associates, Inc. (1995), 273 Mont. 104, 112, 902 P.2d 520, 525. We will affirm the jury's findings if substantial evidence supports them. Cechovic, 902 P.2d at 525.

The first question for the jury on the verdict form was, "Do you find from a preponderance of the evidence that Plaintiff, Lawrence Walker, is a disabled person within the definition

4

furnished by the instructions in this matter?" The jury answered "no."

The jury was instructed that "disability" means that a person

has a mental impairment that substantially limits one or more of his major life activities, has a record of such impairment, or is regarded by the defendant as having such an impairment.

"Major life activities" was defined for the jury as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." The jury was further instructed that an individual "has a record of an impairment" if "he has a history of a mental impairment, even if misclassified, that substantially limits one or more major life activities." The jury was instructed that an individual is "regarded as having a disability" if "his mental impairment does not limit a major life activity, but his employer, through its agents and employees, treats him as being so limited."

Walker claims he suffered from a mental disability brought about by work-related stress. He maintains that he consequently had an acknowledged impairment which substantially limited him in the major life activity of work. He also maintains that he had a documented record of such impairment and that he was regarded as having such an impairment.

While Walker has provided citations to cases which generally outline the law of disability and constructive discharge, neither of the cases upon which he places primary reliance is particularly helpful to his position in the present case. In Martinell v. Montana Power Co. (1994), 268 Mont. 292, 886 P.2d 421, this Court

5

held that work is a major life activity under the Montana Human Rights Act. As noted above, the jury was properly instructed in the present case that work is a major life activity.

The other case upon which Walker places primary reliance is an unpublished opinion of the United States District Court of Montana, Richard Durham v. Montana Power Company (December 8, 1994), Cause No. CV-93-130. In that case, a jury found that Durham was a disabled person and a qualified individual with a disability under the ADA. The jury further found that MPC failed to provide Durham with reasonable accommodation for his disability. The verdict was upheld under the substantial evidence standard.

In the present case, Dr. John Robbins, an internist, testified that he began treating Walker in April 1992. He believed Walker suffered from stress primarily caused by his working conditions and that Walker's symptoms would not be relieved unless the work issues were resolved.

Dr. Robbins further testified that in July 1992, he released Walker to return to work. Dr. Robbins testified that he did not diagnose Walker with major or clinical depression, but with mild depression associated with an anxiety state. He testified that he did not advise Walker to seek counseling from a psychologist or psychiatrist. Walker's last documented visit to Dr. Robbins before his discharge was in August 1992, six months before his discharge, for dizziness resulting from a fall.

Walker contends MPC was aware of medical reports from his treating physicians indicating that he was suffering from job-

6

induced stress and consequent weight loss, symptomatic of depression. He cites the Equal Employment Opportunity Commission's Technical Assistance Manual, which provides that stress and depression may be impairments within the meaning of "disability" under the ADA.

29 C.F.R. § 1630.2(j)(3)(i) provides:

> With respect to the major life activity of working-
> (i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

In Holihan v. Lucky Stores, Inc. (9th Cir. 1996), 87 F.3d 362, depression and anxiety prevented plaintiff Holihan from working as a store manager, but did not prevent him from working in real estate and sign-making business activities. Citing 29 C.F.R. § 1630.2(j)(3), the court ruled that Holihan's depression and anxiety did not render him disabled within the meaning of the ADA, because the depression and anxiety did not prevent him from working at a broad range of jobs, but only at a particular job. Holihan, 87 F.3d at 366.

Similarly, here, Walker has not contended that his depression and stress prevented him from working as a supervisor at MPC or in other employment, but only at a lineman position. Additionally, he testified that he could have physically and mentally performed the duties of a lineman after his demotion, if MPC had "removed the violence" from the workplace.

7

The record of Walker's depression and stress is limited, at best. During his eleven-month absence from work at the end of his employment with MPC, Walker gave various reasons to justify his medical leave. The only evidence that he received treatment by a psychologist or psychiatrist for his claimed mental disability was that he had six sessions with a clinical psychologist in April and May of 1994.

We turn next to Walker's claim that he was regarded as having a disability. Walker cites the evidence that his supervisors allowed him to take extended leave from work and that they suggested he seek counseling. He also cites notes taken by one of his supervisors at a meeting with him, in which the supervisor wrote that his behavior was "paranoid and almost schizo." Walker further cites MPC's offer to discuss long-term disability leave with him as evidence that he was perceived as having a disability.

Both of Walker's supervisors testified that they did not believe he had a record of, nor did they perceive that he had, a mental disability. MPC did not treat Walker as if he were limited in all fields of employment; only in the job of lineman supervisor.

We conclude that the jury properly could have determined that the credible evidence weighed in favor of a finding that Walker did not have a mental impairment which rose to the level of a disability and that he did not have a record of such an impairment. Similarly, we conclude that substantial credible evidence exists in the record that Walker was not regarded as having a disability by

MPC. We hold that substantial evidence supports the jury's finding that Walker was not disabled.

## ISSUE 2

Does substantial evidence support the jury's finding that Walker was not constructively discharged from his employment with MPC?

As part of its verdict, the jury answered in the negative the following question: "Do you find from a preponderance of the evidence that Plaintiff, Lawrence Walker, was constructively discharged from his employment with Montana Power Company?" The jury was instructed that, to prove this claim, Walker must establish that he voluntarily terminated his employment with MPC because of a situation that was created by an act or omission of MPC and that such act or omission created a situation that an objective, reasonable person would find so intolerable that voluntary termination was the only reasonable alternative.

Walker argues that MPC's failure to accommodate him by removing him from a hostile work environment constitutes a constructive discharge. In this regard, he again cites the Martinell case. Martinell had asked to be placed on day shifts instead of rotating shifts because of her health problems caused by pelvic inflammatory disease. This Court held that failure to accommodate Martinell by changing her work shifts was tantamount to a constructive discharge. Martinell, 886 P.2d at 436. In the present case, the jury was instructed on the law of constructive discharge without objection by Walker. Beyond general statements

9

of the law of constructive discharge and disability, we are not persuaded that <u>Martinell</u> controls in this case.

Walker complained of "violence in the workplace," which he maintained caused him a mental disability. In that regard, he testified about an incident of sexual harassment against a female MPC employee which occurred in the early 1980's. He also described two other incidents to the jury, one of which involved an individual employed by a company which contracted with MPC, and the other involving an employee who was terminated from employment with MPC following the incident.

Walker contends that had he taken the demotion to a lineman position, he would have been under the supervision of the same individuals whose performance dissatisfied him while he was a supervisor. He appears to be arguing that his April 1992 demotion to lineman was a constructive discharge. He attempted to present a case at trial that he was a conscientious MPC employee who was unpopular with other employees because he tried to make them live up to his work standards and ethics.

Walker's supervisors testified that they informed him they had placements available for him other than under the men he formerly supervised, in the meter shop or on a substation crew, where he would not be working with the individuals about whom he had complained. Moreover, "[t]he ADA does not require an employer to accommodate an employee who cannot get to work." Kotlowski v. Eastman Kodak Co. (W.D.N.Y. 1996), 922 F.Supp. 790, 798. Walker

10

was not discharged until a full eleven months after his demotion, during which eleven months he had not reported for work.

The record contains ample evidence that Walker's discharge from MPC's employ was for good cause--i.e., his failure to report for work after the expiration of his eleven month long series of medical and personal leave. We conclude that the record contains substantial evidence to support the jury's finding that Walker was not constructively discharged.

### ISSUE 3

Did the District Court err in refusing to set aside the jury's verdict?

This Court will not overturn a decision to grant or deny a motion for a new trial absent a showing of manifest abuse of discretion. Montana Bank of Red Lodge, N.A. v. Lightfield (1989), 237 Mont. 41, 49, 771 P.2d 571, 577.

Walker maintains that the jury's brief deliberation (forty minutes), when taken in conjunction with the relative complexity of the legal issues and the weight of the evidence in this case, supports his position that the court abused its discretion in refusing to set aside the verdict.

As a general rule, shortness of time taken by a jury in reaching its verdict has no effect upon the validity of the verdict. Loppe v. Blocker (Iowa 1974), 220 N.W.2d 570, 574. Only when the brief jury deliberation is coupled with a verdict that is contrary to the great weight of the evidence should the trial court

11

set aside the verdict. Kearns v. Keystone Shipping Co. (1st Cir. 1988), 863 F.2d 177, 182.

The relative complexity of the legal issues in this case had been narrowed and clarified by the court and counsel by the time the court gave its instructions to the jury. The verdict form contained just seven questions, not all of which the jury had to answer if it determined initially that Walker was not a disabled person within the meaning of the instructions. The second question the jury had to consider was whether Walker was constructively discharged, which issue, like whether he was disabled, we have discussed above. Based on the streamlining of the issues and upon our consideration of the issues which remained, we conclude that the jury's verdict is not contrary to the weight of the evidence and that the court did not abuse its discretion in refusing to set aside the verdict.

Walker also lists as an issue whether "the trial court abused its discretion in excluding certain highly relevant testimony bearing on the motivation and pattern of hostile conduct directed against Walker by his antagonists." However, Walker did not further explain or argue this issue in either of his briefs to this Court. Therefore, we do not address it.

Affirmed.

_____
Chief Justice

12

We concur:

_William E. Smith_

_Jim T. Nunneils_

_____

_W. William Bryhart_
Justices

13

October 8, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael J. San Souci; Peter B. Ohman
Law Office of Michael J. San Souci
11 East Main St., Mezzanine Level
Bozeman, MT 59715

W. Wayne Harper, Esq.
Attorney at Law
40 E. Broadway
Butte, MT 59701

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy