No. 98-350

293 Mont. 542

977 P. 2d 330

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 68

GREGG A. HAFNER,

Plaintiff and Appellant,

v.

CONOCO, INC., a Delaware corporation

authorized to do business in Montana,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael G. Eiselein, Lynaugh, Fitzgerald & Eiselein, Billings, Montana

For Respondent:

David A. Veeder, Jolane D. Veeder, Veeder Law Firm, Billings, Montana

Submitted on Briefs: December 30, 1998

Decided: April 1, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1. Gregg A. Hafner (Hafner) appeals from the findings of fact, conclusions of law, and judgment entered by the Thirteenth Judicial District Court, Yellowstone County, in favor of Conoco Inc. (Conoco). On January 14, 1999, after filing his appeal, Hafner filed with this Court a motion for an order or other relief pursuant to Rule 22, M.R.App.P., requesting that the Court either stay the appeal and remand this case to the District Court for the purpose of allowing Hafner to move for a new trial, or, in the alternative, impose sanctions against Conoco for alleged discovery violations. We issued an order dated January 26, 1999, stating that we would take the motion under advisement. Having considered the parties' briefs and memoranda relating to both the appeal and the Rule 22, M.R.App.P. motion, we reverse and remand for further proceedings consistent with this opinion. Further, we deny the Rule 22, M.R.App.P. motion without prejudice, and instead order the District Court to reopen discovery on remand to the extent necessary to comply with this opinion.

¶2. We restate the issues as follows:

¶3. 1. Did the District Court err in finding that Hafner's disability precluded him from performance of the Helper position at Conoco?

¶4. 2. Did the District Court err in concluding that an unlawful discriminatory motive played no role in Conoco's decision to withdraw Hafner's offer of employment?

¶5. 3. Did the District Court err in finding that Conoco had proven, by a preponderance of the evidence, that an unlawful motive played no role in Conoco's

**decision to withdraw Hafner's offer of employment?**

## BACKGROUND

¶6. This is the second appeal filed in this case of alleged employment discrimination brought by Hafner, a physically disabled person, against Conoco. A more detailed account of the facts of this case can be found in Hafner v. Conoco, Inc. (1994), 268 Mont. 396, 886 P.2d 947 (hereinafter Hafner I). To summarize, Hafner suffered an injury to his right knee in 1981 while working as a carpenter. After surgical treatment, Hafner's physician diagnosed him as having a 20% permanent physical impairment in his right knee. Over the next ten years, Hafner was employed first as a school teacher and later as a right-of-way agent for Dubray Land Services, Inc. in Billings. In March 1991, Hafner applied for a job with Conoco as a "Helper" in its Operations Department. After successfully completing the pre-employment test battery, Hafner was offered a "probationary assignment" by Conoco in the Helper position, with regular full-time employment conditioned on successful completion of a physical examination and drug screening at the Billings Clinic.

¶7. In April 1991, Dr. William Shaw (Dr. Shaw), of the Billings Clinic, and Dr. James Scott (Dr. Scott), Hafner's treating physician, examined Hafner. Dr. Shaw noted that Hafner suffered from degenerative joint disease, a condition which would progressively worsen with repetitive climbing, squatting, and carrying. Dr. Shaw also noted that progression of Hafner's condition would cause him physical harm. Dr. Scott noted that Hafner appeared to be doing well but that working in the Helper position at Conoco would likely aggravate his knee problem.

¶8. The Billings personnel director for Conoco sent the reports of the two examining physicians to the Conoco medical department in Oklahoma. After reviewing the reports, physicians at the medical department completed a medical evaluation form and recommended that work restrictions be placed on Hafner including minimal climbing, squatting, and kneeling. On April 25, 1991, upon learning of Hafner's work restrictions, the Billings personnel director decided to withdraw the offer of probationary employment to Hafner, reasoning that Hafner's work restrictions

impaired his ability to perform the essential functions of the Helper position in a safe manner, and that the position could not be modified to accommodate those restrictions.

¶9. Hafner believed he was capable of performing the duties required of him in the Helper position. He believed that in withdrawing the job offer, Conoco had discriminated against him on the basis of a physical disability. Hafner filed a discrimination claim with the Montana Human Rights Commission. The Human Rights Commission issued a right to sue letter and Hafner filed suit against Conoco in District Court alleging violations of the Montana Human Rights Act, §§ 49-2-303, and 49-4-101, MCA.

¶10. The parties thereafter filed cross-motions for summary judgment. In ruling on the matter, the District Court applied the three-stage test for employment discrimination set forth by this Court in Martinez v. Yellowstone County Welfare Dept. (1981), 192 Mont. 42, 626 P.2d 242 (adopting the same test articulated by the United States Supreme Court in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668) (hereinafter the McDonnell test). The first stage of the McDonnell test required Hafner to establish a prima facie case of discrimination by proving the following four elements:

1. That he was a member of the protected class;

2. That he applied for and was qualified for the position;

3. That he was rejected despite being qualified for the position; and

4. That the position remained open and the employer continued to accept applications from persons with comparable qualifications.

McDonnell, 411 U.S. at 802, 93 S.Ct. at 1824. *See also* Hearing Aid Institute v. Rasmussen (1993), 258 Mont. 367, 372, 852 P.2d 628, 632. If Hafner sustained his burden of establishing a prima facie case, the second stage of the McDonnell test required Conoco to rebut the presumption of discrimination by producing a legitimate, non-discriminatory reason for its action. McDonnell, 411 U.S. at 802, 93 S.Ct. at 1824. Finally, if Conoco produced sufficient evidence which, on its face, showed a legitimate, non-discriminatory reason for its action, the third stage of the McDonnell test allowed Hafner the opportunity to prove that Conoco's proffered reason was only a pretext for discrimination. McDonnell, 411 U.S. at 804, 93 S.Ct. at 1825.

¶11. The District Court determined that Hafner failed to sustain his burden of establishing a prima facie case of discrimination, finding that Hafner was not disabled and that he was not otherwise qualified to perform the job of Helper. Although the court need not have reached the second stage of the McDonnell test, the court further determined that Conoco had sustained its burden of producing a legitimate, non-discriminatory reason for its action. On June 8, 1994, the court entered summary judgment in favor of Conoco. Hafner appealed to this Court.

¶12. On December 16, 1994, this Court reversed the District Court holding that summary judgment was improper. First, we addressed the District Court's determination that Hafner had not established the first two elements of a prima facie case of discrimination. With respect to whether Hafner was a member of the protected class, we applied federal law in interpreting the meaning of "physical or mental disability" as described in § 49-2-101(15)(a)(iii), MCA (1993), and ultimately concluded that, as a matter of law, Hafner was disabled because Conoco "regarded" him as such. Hafner I, 268 Mont. at 403, 886 P.2d at 951. With respect to whether Hafner was qualified to perform the job, we again applied federal law in interpreting the meaning of "qualified," and ultimately concluded that, as a matter of law, Hafner was qualified to perform the job in spite of his disability. Hafner I, 268 Mont. at 403-04, 886 P.2d at 951-52. We based this conclusion on the facts that Hafner passed all the written pre-employment tests and was initially offered the job, as well as Hafner's uncontroverted testimony that he understood the demands of the job and had the physical capabilities to meet those demands. Hafner I, 268 Mont. at 403, 886 P.2d at 952.

¶13. Next, this Court addressed the District Court's determination that Conoco had sustained its burden of producing a legitimate, non-discriminatory reason for its action. The Court held that § 49-4-101, MCA, was the proper standard for determining risk of injury and, therefore, the District Court did not err in ruling that Conoco had produced a non-discriminatory reason for its action. Hafner I, 268 Mont. at 405, 886 P.2d at 953. Finally, we stated that because Hafner had established a prima facie case of discrimination, and Conoco had produced a legitimate non-discriminatory reason for its action, the third stage of the McDonnell test was reached: Hafner was now allowed the opportunity to prove that Conoco's proffered reason was only a pretext for discrimination. Hafner I, 268 Mont. at 405, 886 P.2d at 953. The Court concluded that a genuine issue of material fact existed concerning the issue of pretext and remanded the case to the District Court for a trial on the matter.

**Hafner I**, 268 Mont. at 406, 886 P.2d at 953.

¶14. In the interim between remand of this case and commencement of the trial, this Court issued its decision in Reeves v. Dairy Queen, 1998 MT 13, 287 Mont. 196, 953 P.2d 703. In <u>Reeves</u>, the Court recognized that the three-stage <u>McDonnell</u> test created undue confusion for "direct evidence employment discrimination cases," defined as cases in which the parties do not dispute the reason for the employer's adverse action, but only whether such action is illegal discrimination. <u>Reeves</u>, ¶¶ 15-16. The Court held that the appropriate test for direct evidence employment discrimination cases was not the <u>McDonnell</u> test but, rather, the test articulated in Rule 24.9.610(5), ARM. <u>Reeves</u>, ¶¶ 17-18 (recognizing that federal courts have adopted this new test as well). Pursuant to the administrative rule, once a complainant has established a prima facie case of discrimination with direct evidence, the burden shifts to the employer to prove by a preponderance of the evidence that an unlawful motive played no role in the challenged action or that the direct evidence of discrimination is not credible and is unworthy of belief. Rule 24.9.610(5), ARM; <u>Reeves</u>, ¶¶ 17-18.

¶15. After a lengthy discovery period, a non-jury trial commenced on November 17, 1997. On April 28, 1998, the District Court issued its Findings of Fact, Conclusions of Law, and Order. The court made the following findings of fact: that the nature and extent of Hafner's physical disability reasonably precluded performance of the Helper position; that Hafner's performance of the Helper position may have subjected Hafner or his fellow employees to physical harm; that Conoco gathered sufficient information about Hafner to assess the potential injury to himself and others if he were employed as a Helper; and that Conoco's proffered reason for withdrawing its offer of probationary employment to Hafner was not pretextual.

¶16. In its conclusions of law, the court cited our decision in <u>Hafner I</u>, 268 Mont. at 405-06, 886 P.2d at 953, and stated that, as a matter of law, Hafner had established a prima facie case of discrimination and Conoco had set forth a non-discriminatory reason for its action. The court further stated that the new burden-shifting test for direct evidence cases announced in <u>Reeves</u> applied. The court then summarily concluded that Conoco had met its burden of proving by a preponderance of the evidence that an unlawful motive played no role in the challenged action or that the direct evidence of discrimination is not credible and is unworthy of belief. The court entered judgment in favor of Conoco on May 1, 1998. This appeal followed.

¶17. On January 14, 1999, while this appeal was pending, Hafner filed with this Court a motion for an order or other relief pursuant to Rule 22, M.R.App.P. Hafner requested the Court to stay the appeal and remand the case to allow him to move the District Court for a new trial. In the alternative, Hafner requested the Court to impose sanctions on Conoco for alleged discovery violations. Hafner stated that the basis for these requests was that while this appeal was pending, he had come into possession of Conoco's job description for the position of "Unit Operator." Like the Helper position, the Unit Operator position was one of four positions within the operations department at Conoco: Unit Operator, Helper, Trainee, and Controlman. The job description for Unit Operator lists the following minimum physical requirements needed to perform the job: occasional walking, occasional standing, occasional squatting, frequent sitting, and occasional lifting of ten pounds and frequent lifting of a half pound. No climbing or carrying was required.

¶18. Hafner stated that during discovery, Conoco produced the job descriptions for the Helper, Trainee, and Controlman positions, but not the Unit Operator position. The Unit Operator position is the only position of the four that does not require frequent walking, climbing, standing, squatting, and lifting and carrying in excess of fifty pounds. Hafner alleged that Conoco willfully and fraudulently withheld this important documentary evidence, and that such conduct deprived Hafner of a fair trial. Conoco denied these allegations. We issued an order dated January 26, 1999, stating that we would take the Rule 22, M.R.App.P., motion under advisement.

DISCUSSION

*Issue One*

¶19. Did the District Court err in finding that Hafner's disability precluded him from performance of the Helper position at Conoco?

¶20. Hafner argues that the District Court erred in finding that his disability precluded him from performance of the Helper position because such a finding was contrary to the law of the case and, therefore, beyond the scope of the court's jurisdiction. We agree. The law of the case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." Marriage of Scott (1997), 283 Mont. 169, 175, 939 P.2d 998, 1001-02. We have held:

[W]here upon an appeal, the Supreme Court, in deciding a case presented, states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal.

Scott, 283 Mont. at 175-76, 939 P.2d at 1002. Here, the parties appear in a second appeal of the same case involving the same issues as those previously addressed in Hafner I. In Hafner I, this Court determined, as a matter of law, that Hafner was qualified to perform the tasks required of the Helper position. Having made this determination in Hafner I, it became the law of the case and the District Court was without jurisdiction to revisit the issue. We hold that the court erred in finding that Hafner's disability precluded him from performance of the Helper position.

¶21. Although we find error in the court's finding, we recognize the confusion that application of Reeves may have had on the instant case. Therefore, for the benefit of the court and the parties on remand of this case, we take this opportunity to briefly clarify the proper application of Reeves to the instant case. As previously stated, Reeves changed the shifting burden requirements for direct evidence employment discrimination cases. In such cases, once the complainant has established a prima facie case of discrimination with direct evidence, the burden then shifts to the employer to prove either or both of two defenses: that an unlawful motive played no role in the challenged action or that the direct evidence of discrimination is not credible and is unworthy of belief. Reeves, ¶¶ 17-18; Rule 24.9.610(5), ARM.

¶22. The instant case is unique and very different from most direct evidence cases. Here, the law of the case precludes Conoco from choosing the second defense and attacking the credibility of the direct evidence of discrimination. In Hafner I, we determined, as a matter of law, that Hafner was disabled, that he was qualified, and that he had established a prima facie case of discrimination. We held that Hafner was statutorily disabled because Conoco regarded him as such. Those determinations are the law of the case and cannot be revisited by the parties or the District Court. Scott, 283 Mont. at 175-76, 939 P.2d at 1002. Furthermore, Conoco does not dispute that it withdrew Hafner's job offer on the basis of his disability. Conoco disputes only whether this discrimination was illegal. Thus, the only part of Reeves applicable to this case is Conoco's burden of proving absence of unlawful motive in the challenged action. Put another way, what was Hafner's burden of proving pretext under Hafner

**I** and the **McDonnell** test, is now Conoco's burden of proving absence of unlawful motive under the **Reeves** test.

*Issue Two*

**¶23.** Did the District Court err in concluding that an unlawful discriminatory motive played no role in Conoco's decision to withdraw Hafner's offer of employment?

**¶24. We review a district court's conclusions of law to determine whether the court's interpretation of law is correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.**

**¶25. In Hafner I, Conoco defended its decision to withdraw Hafner's job offer on the ground that Hafner's disability prevented him from performing the tasks of the Helper position in a safe manner, and that the position could not be modified to accommodate his disability. Hafner I, 268 Mont. at 400, 886 P.2d at 950. Conoco based its defense on §§ 49-4-101 and 49-2-101(15)(b), MCA (1993). Section 49-4-101, MCA, provides in relevant part:**

It is unlawful to discriminate, in hiring or employment, against a person because of the person's physical disability. There is no discrimination . . . when the particular employment may subject the person with a disability or that person's fellow employees to physical harm.

Section 49-2-101(15)(b), MCA, provides:

Discrimination based on, because of, on the basis of, or on the grounds of physical or mental disability includes the failure to make reasonable accommodations that are required by an otherwise qualified person who has a physical or mental disability. An accommodation that would require an undue hardship or that would endanger the health or safety of any person is not a reasonable accommodation.

Upon remand of the case and in light of our determination that, as a matter of law, Hafner

was qualified to perform the tasks of the Helper position, Conoco modified its defense by arguing that because Hafner's knee condition was progressive, employment in the Helper position may subject Hafner to a risk of *future* physical harm.

**¶26. In its conclusions of law, the District Court followed <u>Hafner I</u>, 268 Mont. at 406, 886 P.2d at 953, and concluded that the federal standard concerning risk of harm articulated in Mantolete v. Bolger (9th Cir. 1985), 767 F.2d 1416, provided "useful guidance" in determining the issue of pretext. The court explained that the <u>Mantolete</u> standard provides that in order to exclude a qualified disabled individual on the basis of a risk of harm, there must be a showing of a "reasonable probability of substantial harm."** *See* <u>**Mantolete**</u>**, 767 F.2d at 1422-23. Further, the court explained that such a showing cannot be based merely on an employer's subjective evaluation or, except in cases of a most apparent nature, merely on medical reports.** *See* <u>**Mantolete**</u>**, 767 F.2d at 1422-23.**

**¶27. Despite these conclusions of law, the court did not issue a finding that Conoco had shown a "reasonable probability of substantial harm." Rather, the court found that Hafner's employment as a Helper at Conoco "may have subjected Hafner or his fellow employees to physical harm." Further, it appears the court based this finding on medical reports alone. The court issued only the following finding:**

Based on the testimony of Dr. Shaw, Dr. Scott, Dr. Rudert, and Dr. Rapagnani [the latter two identified as the reviewing physicians in Conoco's medical department], the court finds that Plaintiff's knee condition would have prevented him from progressing beyond the probationary period in the Helper position with Conoco.

Based on these findings alone, the court ultimately concluded that no unlawful motive played a role in Conoco's decision to withdraw Hafner's job offer.

**¶28. Hafner contends the District Court misinterpreted the law in concluding that no unlawful discriminatory motive played a role in Conoco's decision to withdraw Hafner's job offer. Hafner bases his contention on three grounds: (1) the court failed to apply the correct legal standard regarding the risk of harm; (2) the court failed to make necessary findings and conclusions concerning whether reasonable accommodations were available to Hafner and, if so, whether Conoco discharged its affirmative duty to make such reasonable accommodations; and (3) the court failed**

to make necessary findings and conclusions concerning whether Conoco discharged its affirmative duty to conduct an independent assessment of the risk of harm and whether such risk could be reduced or eliminated by an accommodation. We agree with Hafner on all three grounds and discuss each one in turn.

*A. Legal Standard for Risk of Harm*

**¶29. With respect to the correct legal standard for risk of harm, Hafner argues that the court erred in applying the expansive "*may* subject the person to *physical harm*" language of § 49-4-101, MCA, and failing to apply the more restrictive "*reasonable probability of substantial harm*" standard articulated in Mantolete. Hafner lists several reasons in support of his argument. First, Hafner notes that this Court specifically rejected an expansive interpretation of the language in § 49-4-101, MCA, when determining whether an employer's failure to hire a person based on safety concerns is pretextual or unlawful. Hafner I, 268 Mont. 406, 886 P.2d at 953. He notes that the Court indicated that such a loose interpretation would allow easy circumvention of the Montana Human Rights Act because any employer could regard a disabled person with a progressive condition as subject to future harm. Hafner I, 268 Mont. 406, 886 P.2d at 953.**

**¶30. Second, Hafner points out that § 49-4-101, MCA, was modeled after a similar statute in New Jersey. *See* Minutes of the Meeting of the Labor and Employment Relations Committee, Montana State Senate (1974) (statement of Tony Softich on HB 654). Hafner states that the New Jersey Supreme Court analyzed the risk of harm defense under that state's anti-discrimination statute and held that the correct legal standard for risk of harm was the Mantolete standard. *See* Jansen v. Food Circus Supermarkets, Inc., (N.J. 1988), 541 A.2d 682. Hafner argues the Jansen decision is persuasive authority. The Jansen court held:**

[A]n employer may consider whether the handicapped person can do his or her work without posing a serious threat of injury to the health and safety of himself or herself or other employees. That decision requires the employer to conclude with a reasonable degree of certainty that the handicap will probably cause such an injury. The mere fact that the applicant is an epileptic will not suffice. Otherwise, unfounded fears or prejudice about epilepsy could bar epileptics from the work force. The appropriate test is not whether the employee suffers from epilepsy or whether he or she may experience a seizure on the job, but whether the continued employment of the employee in his or her present position

poses a *reasonable probability of substantial harm.*

Jansen, 541 A.2d at 687-88 (citations omitted) (emphasis added). The Jansen court also indicated that its holding was consistent with several other jurisdictions. Jansen, 541 A.2d at 688.

**¶31. Lastly, Hafner states that the <u>Mantolete</u> standard is consistent with federal regulations promulgated by the Equal Employment Opportunity Commission implementing the Americans with Disabilities Act of 1990 (ADA). The regulations provide:**

An employer may require, as a qualification standard, that an individual not pose a direct threat to the health or safety of himself/herself or others. . . . An employer, however, is not permitted to deny an employment opportunity to an individual with a disability merely because of a slightly increased risk. *The risk can only be considered when it poses a significant risk, i.e. high probability of substantial harm*; *a speculative or remote risk is insufficient.*

29 C.F.R. § 1630.2(r) (1997) (emphasis added). Hafner cites several cases in which this Court has looked to federal regulations interpreting the ADA for guidance in interpreting provisions of the Montana Human Rights Act, and urges the Court to continue this practice. *See* <u>Reeves</u>; Walker v. Montana Power Co. (1996), 278 Mont. 344, 924 P.2d 1339; <u>Hafner I</u>; Martinell v. Montana Power Co. (1994), 268 Mont. 292, 886 P.2d 421; Hearing Aid Institute v. Rasmussen (1993), 258 Mont. 367, 852 P.2d 628; McCann v. Trustees, Dodson School Dist. (1991), 249 Mont. 362, 816 P.2d 435.

**¶32. Further, the *amici curiae* in this case note that in 1996, after this Court's decision in <u>Hafner I</u>, the Montana Human Rights Commission included the <u>Mantolete</u> standard in promulgating Rule 24.9.606(7), ARM, which provides:**

If an employer defends an adverse employment action against a person with a physical or mental disability on the grounds that an accommodation would endanger the health or safety of a person, the employer's failure to independently assess whether the accommodation would create a *reasonable probability of substantial harm* will create a disputable presumption that the employer's justification is a pretext for discrimination on the basis of disability. (Emphasis added.)

¶33. The *amici* also note that when this Court first addressed the Mantolete standard in Hafner I, it did so in the context of the McDonnell test. The Court held that while Mantolete would not control in determining whether an employer has produced a non-discriminatory reason for the challenged action, Mantolete would provide "useful guidance" in determining whether such reason was a mere pretext. Hafner I, 268 Mont. at 406, 886 P.2d at 953. The *amici* argue that in light of Reeves, and the employer's expanded burden of proving absence of unlawful motive in direct evidence cases, the Mantolete standard is the most appropriate standard in determining risk of harm.

¶34. We find Hafner's and the *amici*'s arguments persuasive. Equally persuasive is the need to effectively balance the disabled individual's interest of enjoying true equal employment opportunities with the employer's interest of ensuring that employment of disabled individuals does not pose a risk of harm to themselves or others. As Hafner and the *amici* have argued, it appears our pronouncement in Hafner I, that the Mantolete standard serves as "useful guidance" in determining risk of harm, has not been effective in correcting the imbalance created by the expansive "may" language in § 49-4-101, MCA, and implementing the remedial purposes of Montana's anti-discrimination statutes. We are required to construe statutes in a manner consistent with their intended purpose. Section 1-2-102, MCA. Therefore, in keeping with this duty, and in an effort to provide employees, employers, lawyers, and judges definitive guidance concerning the risk of harm defense, we hold that in all employment discrimination cases, the appropriate standard to be applied when determining whether employment of a job applicant poses a risk of harm to himself or others, is the Mantolete standard, that is, whether employment of the job applicant poses a reasonable probability of substantial harm to himself or others.

### B. Reasonable Accommodations

¶35. At trial, Hafner presented testimony by Dr. Rudert that accommodations were available to reduce the risk of harm to Hafner. Dr. Rudert testified that Hafner could use knee pads, and could be trained to perform a climbing technique that puts more stress on the "good" knee and less stress on the "bad" knee. Further, the recently discovered job description of "Unit Operator" reveals that placing Hafner in the

Unit Operator position, a position within the same department as the Helper position, may constitute a reasonable accommodation for Hafner's knee problem. Despite Dr. Rudert's testimony, however, the District Court failed to make any findings or conclusions concerning whether reasonable accommodations were available to Hafner and, if so, whether Conoco discharged its affirmative duty to make such reasonable accommodations. Hafner argues that the District Court's failure in this regard constitutes clear error. We agree.

¶36. An employer has an affirmative duty to make reasonable accommodations that are required by an otherwise qualified disabled person. In <u>Reeves</u>, we stated:

Montana law requires employers to reasonably accommodate their employees if the employees are disabled or are regarded as such, unless the accommodation would impose an undue hardship on the employer or endanger the health and safety of any person.

<u>Reeves</u>, ¶ 40 (citing § 49-2-101(19)(b), MCA). *See also* Rule 24.9.606, ARM. An employer's duty to provide reasonable accommodations to disabled persons is an essential part of Montana's anti-discrimination statutes. Martinell, 268 Mont. at 309-10, 886 P.2d at 432. Upon the foregoing, we hold that the District Court erred in failing to make the necessary findings and conclusions concerning whether reasonable accommodations were available to Hafner and, if so, whether Conoco discharged its affirmative duty to make such reasonable accommodations.

## C. Independent Assessment of the Risk of Harm

¶37. In its findings of fact, the District Court made only the following finding concerning assessment of the risk of substantial harm:

Conoco gathered sufficient information about Plaintiff to assess the potential injury to Plaintiff and others if Plaintiff were employed by Conoco in the Helper position.

Hafner argues that the court erred in failing to make more specific findings concerning whether Conoco discharged its affirmative duty to conduct an independent assessment of the risk of substantial harm, and whether such risk could be reduced or eliminated by an accommodation. Hafner bases his argument on our decision in <u>Reeves</u> and on Rule 24.9.606(7) and (8), ARM. In <u>Reeves</u>, we specifically disapproved of an employer making unilateral decisions regarding what would be best for its disabled employee, regardless of

the good intentions of the employer. <u>Reeves</u>, ¶ 35. We intimated that in order to establish the risk of harm defense, an employer must speak directly with the disabled employee about the seriousness of his or her condition and become generally informed about the effects of his or her condition. <u>Reeves</u>, ¶ 35.

**¶38. In a later part of <u>Reeves</u>, where we discussed the employer's failure to make reasonable accommodations, we held that when an employer defends an employment discrimination action on the basis that no accommodation can be made without posing a risk of harm, the employer has an affirmative duty to conduct an independent assessment of the risk of substantial harm. <u>Reeves</u>, ¶ 42. We held that such an independent assessment involves:**

evaluation by the employer of the probability and severity of potential injury in the circumstances, taking into account all relevant information regarding the work and medical history of the person with the disability before taking the adverse employment action in question.

<u>Reeves</u>, ¶ 42 (quoting Rule 24.9.606(8), ARM). We again stressed the importance of the employer speaking directly with the employee concerning ways to ensure the employee's safety in future employment. Reeves, ¶ 42.

**¶39. Rule 24.9.606(7), ARM, provides further guidance on this issue. That rule provides:**

If an employer defends an adverse employment action against a person with a physical or mental disability on the grounds that an accommodation would endanger the health or safety of a person, the employer's failure to independently assess whether the accommodation would create a reasonable probability of substantial harm will create a disputable presumption that the employer's justification is a pretext for discrimination on the basis of disability.

We believe this rule further underscores the importance of the independent assessment requirement.

**¶40. The federal regulations under the ADA provide useful guidance as well. The regulations detail the highly individualized nature of the federal independent**

assessment required under that statute's "direct threat" analysis. The interpretive guidelines to 29 C.F.R. § 1630.2(r), provide:

Determining whether an individual poses a significant risk of substantial harm to others must be made on a case by case basis. . . . For individuals with physical disabilities, the employer must identify the aspect of the disability that would pose the direct threat. The employer should then consider the four factors listed in part 1630. . . . Such consideration must rely on objective, factual evidence--not on subjective perceptions, irrational fears, patronizing attitudes, or stereotypes--about the nature or effect of a particular disability, or of disability generally. Relevant evidence may include input from the individual with a disability, the experience of the individual with a disability in previous similar positions, and opinions of medical doctors, rehabilitation counselors, or physical therapists who have expertise in the disability involved and/or direct knowledge of the individual with the disability. Generalized fears about risks from the employment environment, such as exacerbation of the disability caused by stress, cannot be used by an employer to disqualify an individual with a disability.

¶41. In light of Reeves, and the clear import of the independent assessment requirement expressed by the Administrative Rules of Montana and the federal regulations interpreting the ADA, we hold that when an employer defends an employment discrimination case by asserting risk of harm, the employer has a duty to independently assess that risk of harm in accordance with Rule 24.9.606(8), ARM, regardless of whether the case arises under the McDonnell or Reeves burden-shifting tests, and regardless of whether the alleged risk of harm is directed to the employee's initial qualifications or the existence of reasonable accommodations. We hold that in determining whether an employer has discharged its duty in this regard, a district court must make specific findings concerning with whom the employer spoke about the risk of substantial harm and whether the employer took into account all relevant information concerning the risk of harm including the following: the seriousness of the employee's injury, the employee's work history, the employee's medical history, and the existence of reasonable accommodations that could possibly reduce the risk of substantial harm to the employee. These findings are necessary to a complete resolution of an employment discrimination claim. Applying our holding to the instant case, we determine that the District Court erred in failing to make more specific findings concerning whether Conoco adequately discharged its affirmative duty to independently assess the risk of substantial harm to Hafner.

*Issue Three*

¶42. Did the District Court err in finding that Conoco had proven, by a preponderance of the evidence, that an unlawful motive played no role in Conoco's decision to withdraw Hafner's offer of employment?

¶43. The parties argue at length whether sufficient evidence exists to support the court's findings that employment at Conoco subjected Hafner to a risk of harm and that an unlawful motive played no role in Conoco's decision to withdraw Hafner's offer of employment. Further, the parties dispute certain credibility determinations made by the court. In light of the above discussion concerning the need for further proceedings in this case, we determine that any inquiry into the sufficiency of the evidence or the adequacy of the court's credibility determinations at this time would be futile. Therefore, we decline to address these issues.

¶44. Upon the foregoing, this case is reversed and remanded for further proceedings consistent with this opinion. The Rule 22, M.R.App.P., motion filed by Hafner during the pendency of this appeal is denied without prejudice. Instead, the District Court is ordered to reopen discovery to the extent necessary to comply with this opinion.

¶45. Reversed and remanded.


/S/ WILLIAM E. HUNT, SR.


We Concur:


/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson specially concurs and dissents.

**¶46. I concur in our decision on Issues 1 and 3 and in our discussion under "B. Reasonable Accommodations" at ¶¶ 35-36 of Issue 2. In light of the amendment to Rule 24.9.606(7), ARM, adopted after our decision in *Hafner I* and discussed in ¶ 32, I also concur in the substance of our discussion under "A. Legal Standard for Risk of Harm" at ¶¶ 29-34 and "C. Independent Assessment of the Risk of Harm" at ¶¶ 37-41, of Issue 2. With regard to these latter two discussions, however, I would not apply the *Mantolete* standard in this case but, rather, would apply this standard prospectively only. In my view, the doctrine of the law of the case requires this result.**

**¶47. In *Hafner I*, although we concluded that *Mantolete* provides "useful guidance in relation to pretext" we declined to adopt this standard as controlling. It was in that posture that *Hafner I* was remanded to the trial court for further proceedings "consistent with [our] opinion." *Hafner*, 268 Mont at 406, 886 P.2d at 953. Our subsequent decision in *Reeves* did not mention *Mantolete*.**

**¶48. We recently summarized the law of the case doctrine in *Scott v. Scott* (1997), 283 Mont. 169, 939 P.2d 998, as follows:**

[this] doctrine "expresses the practice of courts generally to refuse to reopen what has been decided. It expresses the rule that the final judgment of the highest court is the final determination of the parties' rights." This Court has stated that

[t]he rule is well established and long adhered to in this state that where upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal.

*Scott*, 283 Mont at 175-76, 939 P.2d at 1001-02 (citing Fiscus v. Beartooth Elec. Cooperative, Inc. (1979), 180 Mont. 434, 436, 591 P.2d 196, 197). Moreover, "[w]hether the opinion is right or wrong, it is the law of the case . . . and is binding upon us." Fiscus, 180 Mont. at 437, 591 P.2d at 198 (citation omitted). "Once a decision has been rendered by this Court on a particular issue between the same parties in a case, that decision is binding upon the courts and the parties and cannot be relitigated in a subsequent appeal." In re Marriage of Becker (1992), 255 Mont. 357, 361, 842 P.2d 332, 334 (citation omitted). Finally, when a case is reversed and remanded for further proceedings "the trial court is not free to ignore the mandate and opinion of the reviewing court, but must proceed in conformity with the views expressed by the appellate court." Haines Pipeline Const. v. Montana Power (1994), 265 Mont. 282, 290, 876 P.2d 632, 637 (citation omitted).*

¶49. In *Hafner I*, our decision not to adopt the *Mantolete* standard became the law of the case. As such, our decision determined the rights of the parties on this matter, governed the further progress of the case before the trial court on remand and could not be relitigated in this, the subsequent appeal. In applying the *Mantolete* standard here instead of the standard set out in § 49-4-101, MCA, as we did in *Hafner I*, we have clearly (and without explanation) violated the law of the case doctrine.

¶50. It is ironic that, as to Issue 1, we have reversed the trial court for violating the law of the case doctrine and *Scott*, but that, as to Issue 2, we have, ourselves, simply ignored this same doctrine and controlling precedent. As to the application of the *Mantolete* standard in the case at bar, I dissent. I concur with the balance of our opinion.

/S/ JAMES C. NELSON