DA 12-0289

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 31

PUBLIC LAND/WATER ACCESS
ASSOCIATION, INC.,

        Petitioner and Appellant,

   v.

ROGER JONES,

        Respondent and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Ninth Judicial District,<br>In and For the County of Teton, Cause No. DV-11-054<br>Honorable Wm. Nels Swandal, Presiding Judge |

COUNSEL OF RECORD:

       For Appellant:

              J. Devlan Geddes; Benjamin J. Alke; Goetz, Gallik & Baldwin, P.C.;
              Bozeman, Montana

       For Appellee:

              John E. Bloomquist, Rachel A. Kinkie; Doney Crowley Payne
              Bloomquist, P.C.; Helena, Montana

| | |
|---|---|
| Submitted on Briefs: | November 28, 2012 |
| Decided: | February 12, 2013 |

Filed:

_____
                     Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1　This is the fourth appeal involving public access across Appellee Roger Jones's Teton County property. In prior litigation, Public Land/Water Access Association, Inc. (Association) established public prescriptive easements over Boadle Road, Boadle Bridge and Canal Road, which together form a route across the property. The Association now appeals a decision of the Ninth Judicial District Court denying its petition for supplemental relief and dismissing its complaint against Jones for damages resulting from his removal of the Boadle Bridge. We reverse the District Court's order and remand the case for further proceedings.

¶2　The dispositive issue is whether the District Court erred by dismissing the Association's claims and denying its petition for supplemental relief after Jones removed a bridge connecting Boadle and Canal Roads.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3　In 2000, Jones purchased a parcel of land in Teton County, on which Boadle and Canal Roads intersect. The roads connect across Sun River Slope Canal via the Boadle Bridge, which Teton County periodically maintained and then rebuilt in 1990. The public has since the early 1900s used the roads and bridge for various purposes, including recreation, moving cattle, travel to work, and access to the town of Choteau. In 1999 or 2000, Jones's predecessor-in-interest erected a gate on Boadle Road and posted signs indicating the road was closed to the public. Upon purchasing the property, Jones continued to deny public access to both roads.

2

¶4 The Association's first lawsuit against Jones established a public prescriptive easement across both Boadle Road and Boadle Bridge. *Pub. Lands Access Assn., Inc. v. Jones* (*PLA I*), 2004 MT 394, 325 Mont. 236, 104 P.3d 496. In February 2002, while that case was pending, a wildland fire destroyed the bridge and Jones replaced it in April 2002 with a personally-owned flatbed railcar. Jones argued on appeal to this Court that "because [he] built and owns the current bridge," he could destroy it or prevent public access to it from Boadle Road. *PLA I*, ¶ 28. We disagreed with Jones and held that "the public has a right to access the bridge and the land under the bridge without interference from Jones[.]" *PLA I*, ¶ 31.

¶5 The parties' second dispute concerning public access, this time to Canal Road, first came before the Court in *Public Lands Access Assn., Inc. v. Jones* (*PLA II*), 2008 MT 12, 341 Mont. 111, 176 P.3d 1005, and was resolved when we affirmed in a memorandum opinion that a public prescriptive easement had been established by facts nearly identical to those we considered in *PLA I*. *Pub. Lands Access Assn., Inc. v. Jones* (*PLA III*), 2011 MT 236N, ¶ 6, 362 Mont. 545, 272 P.3d 125.

¶6 On November 22, 2011, the Association filed a Petition for Supplemental Declaratory Relief and Complaint for Damages, alleging that Jones had destroyed the bridge in violation of *PLA I*. The complaint stated that Jones had removed Boadle Bridge, placed "no access" signs along Boadle Road, and built a new bridge accessing a private road, which he marked with "no trespassing" signs. The complaint included claims of tortious interference with public easement, public nuisance and actual malice,

for which the Association claimed punitive damages.  The Association petitioned for supplemental declaratory relief in the form of a sanction against Jones, and an order requiring him to finance reconstruction of the bridge, remove all signs indicating that Boadle Bridge was closed, and pay reasonable costs and attorneys' fees.  On December 23, 2011, Jones filed a M. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim on the basis that no court had addressed rights to the Boadle Bridge and that "[t]o the extent that the public had an interest in any bridge over the Sun River Slope Canal, that interest was in the bridge that existed prior to February 2002."  The District Court held a hearing on March 7, 2012.

¶7     On April 11, 2012, the District Court dismissed the Association's complaint and petition, based primarily on its conclusion that:

> to the extent the public had an easement to use a specific bridge, that bridge was destroyed by fire in February 2002.  The public retains an easement for the Boadle Road, which includes an easement for a bridge should the public or other person or entity construct a bridge within the Boadle Road right-of-way.

The District Court held that Jones had no obligation to facilitate public access.  In denying supplemental relief, the District Court stated that neither it "nor the Montana Supreme Court has ever been asked to grant or has actually granted the public an interest in Jones' bridge or reserved such post-judgment relief for a later time."

**STANDARD OF REVIEW**

¶8     "We review de novo a district court's decision on a motion to dismiss."  *Martin v. Artis*, 2012 MT 249, ¶ 8, 366 Mont. 513, 290 P.3d 687.  We review for an abuse of

4

discretion a district court's ruling granting or denying supplemental relief under § 27-8-313, MCA. *Western Tradition Partn. v. Atty. Gen. of Mont.*, 2012 MT 271, ¶ 7, 367 Mont. 112, 291 P.3d 545.

**DISCUSSION**

¶9      *1. Did the District Court err by dismissing the Association's claims and denying its petition for supplemental relief after Jones removed a bridge connecting Boadle and Canal Roads?*

¶10      The Association argues that the District Court erred by concluding on the basis of Jones's ownership of the bridge that he could remove it from the public right-of-way. The Association points out that our holding in *PLA I* was not contingent on who owned the bridge, and, moreover, that Jones's railcar bridge was in place when we issued that decision. We agree with the Association that we squarely addressed the question whether Jones could remove his personally-owned bridge from the roadway. We summarized Jones's argument as follows:

> Therefore, because Jones built and owns the current bridge, he argues he can either destroy the bridge to prevent the public from accessing it once they reach the end of the public easement, or he can continue to keep the gate on the bridge locked so the public cannot access it.

*PLA I*, ¶ 28. In holding that the Boadle Bridge was included within the scope of the prescriptive easement, we expressly disagreed with Jones's argument that he could remove the bridge or otherwise interfere with public access to it:

> [T]he public has a right to access the bridge and the land under the bridge without interference from Jones as the easement burdens the servient tenement, Jones' land, not merely the physical structure connecting the Boadle Road to the Canal Road. *See* § 70-17-103, MCA. Whether Jones

5

has rights in the bridge itself is a question that was not litigated below and will not be addressed on appeal.

*PLA I*, ¶ 31.

¶11 Jones now asserts that, since we declined to discuss ownership of the bridge in *PLA I*, we did not address whether the public had a right to access the particular bridge in place at the time, which he independently purchased and installed. Again, we disagree. By definition, an easement involves the right to use property owned by another. *See Ray v. Nansel*, 2002 MT 191, ¶ 22, 311 Mont. 135, 53 P.3d 870 ("An easement is a nonpossessory interest in land that gives a person the right to use the land of another for a specific purpose."). The scope of a prescriptive easement is determined, not by ownership of the underlying property, but by "use during the prescriptive period." *Han Farms, Inc. v. Molitor*, 2003 MT 153, ¶ 24, 316 Mont. 249, 70 P.3d 1238. In *PLA I*, we concluded based on the historical public use of Boadle Bridge that the bridge fell within the easement's scope. *PLA I*, ¶ 31 ("[T]he evidence presented at trial clearly established the public used the Boadle Road, including the Boadle Bridge[.]"). Thus, we did not consider "[w]hether Jones has rights in the bridge itself" because that issue had not been raised and was not necessary to our decision that the bridge was included in the public right of access. *PLA I*, ¶ 31.

¶12 Our pronouncement in *PLA I* that the public had a right to access Boadle Bridge "without interference from Jones," *PLA I*, ¶ 31, regardless of whether "Jones built and owns the current bridge," *PLA I*, ¶ 28, became the law of the case, which "must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent

6

appeal." *Hafner v. Conoco, Inc.*, 1999 MT 68, ¶ 20, 293 Mont. 542, 977 P.2d 330 (citation and quotation marks omitted). We deny Jones's attempt to re-litigate a question already decided. Jones's private ownership of the railcar bridge and his concerns about its suitability for public use are matters to be evaluated in determining the appropriate relief to be granted.

¶13 At the time Jones installed the railcar bridge, there had been public use of the roadway for a hundred years, save for the period when Jones and his predecessor blocked access. *See PLA I*, ¶ 8; *PLA III*, ¶ 3. Litigation over that access was pending when Jones took it upon himself to place the bridge within the roadway, upon which it "became a part thereof." *State ex rel. Donlan*, 49 Mont. 517, 522-23, 143 P. 984, 985 (1914) (citing *State ex rel. Foster v. Ritch*, 49 Mont. 155, 156-57, 140 P. 731, 731 (1914)). Given the circumstances existing at the time, Jones's unilateral intent that the bridge not be used by the public is not determinative.

¶14 The District Court noted in its factual findings, but then neglected to consider, the following sequence of events: (1) in April 2002, Jones purchased and installed the flatbed railcar as a bridge; (2) in July 2003, the District Court's judgment granted public access to Boadle Road; and (3) in December 2004, we affirmed in *PLA I* that the public held a prescriptive easement to Boadle Road, including the bridge. During the March 2012 hearing, Jones acknowledged that the railcar bridge was in place during the original litigation over access to Boadle Road and Boadle Bridge. He also agreed that he and third parties had used the railcar as a bridge beginning in April 2002, until he removed it

7

in September 2011—approximately nine years later. In ruling that "Jones is under no obligation to facilitate [public] access," the District Court ignored the state of the record at the time that we issued *PLA I*. Jones acted purely on his own initiative when he installed the bridge while *PLA I* was pending; we then recognized the public had a right to use the bridge free from interference; and Jones's subsequent removal of the bridge constituted interference with public access, in violation of *PLA I*.

¶15 The District Court also considered the fact that, despite gaining access to Boadle Bridge as early as 2003, the public did not actually use the bridge because it gained access to Canal Road only in September 2011, when we decided *PLA III*. Jones had at that point already removed the bridge. Of course, the reason the public did not use the bridge was that Jones had blocked access to roads this Court ultimately held were open to the public. *See PLA I*; *PLA III*. In any event, whether the public actually exercised its right of access to the bridge is not relevant to the question of Jones's compliance with *PLA I*. As noted, at the time of that decision, the railcar bridge was in place and we recognized the public's right to use "the bridge and the land under the bridge without interference from Jones[.]" *PLA I*, ¶ 31. The District Court misapprehended our decision when it stated that *PLA I* granted public access only to the bridge that was destroyed by fire in 2002, and thus its dismissal of the Association's complaint was based on an incorrect legal interpretation.

¶16 The District Court's reasons for denying the petition for supplemental relief similarly are based on legal error. Section 27-8-313, MCA, provides that "[f]urther relief

8

based on a declaratory judgment or decree may be granted whenever necessary or proper." The court stated that "[t]here is no final judgment determining liabilities, obligations, or rights pertaining to the physical structure spanning Sun River Slope Canal such that the supplemental relief [the Association] now requests is warranted." It stated further that the Association had "never requested an interest in the bridge." Given the discussion above, and the scope of the prescriptive easement determined in *PLA I*, the Association is entitled to consideration of its petition. *PLA I*, ¶ 31.

¶17 For the foregoing reasons, we reverse and remand the case for further proceedings on the Association's Petition for Supplemental Declaratory Relief and Complaint for Damages.


/S/ Beth Baker


We concur:

/S/ Mike McGrath
/S/ Michael E Wheat
/S/ Patricia Cotter
/S/ Brian Morris

9