No. 98-613

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 266N

LARRY WAGENMAN,

Plaintiff and Appellant,

v.

WESTERN ENERGY COMPANY,

Defendant and Respondent.

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Rosebud,

The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brenda R. Gilbert, Swandal, Douglass & Gilbert; Livingston, Montana

For Respondent:

W. Wayne Harper, Attorney at Law; Butte, Montana

Submitted on Briefs: July 1, 1999

Decided: November 2, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶ **Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

¶ **Larry Wagenman appeals from the Judgment entered by the Sixteenth Judicial District Court, Rosebud County, in favor of Defendant Western Energy Company ("WECO"). We affirm the District Court although we do not agree with all the findings and conclusions reached by the District Court as set forth below.**

¶ **Wagenman's appeal raises the following issues:**

¶ 1. Whether the District Court erred in finding that Wagenman did not establish a prima facie case of employment discrimination?

¶ 2. Whether the District Court erred in concluding that WECO proffered a "legitimate business purpose" for its adverse employment decision?

¶ 3. Whether the District Court erred in finding that Wagenman did not prove that WECO's reason for discriminating against him was pretextual?

¶ 4. Whether the District Court erred in finding that Wagenman did not prove by a preponderance of the evidence that WECO retaliated against him?

## FACTUAL BACKGROUND

¶ In 1960 Wagenman injured his back while operating a water truck. As a result of that injury, he underwent a surgical procedure known as a laminectomy. Wagenman could not work for six months following the surgery. He eventually recovered and resumed working as a heavy equipment operator.

¶ On August 15, 1985, Wagenman filed an application for employment as a scraper operator with WECO at its mining operation in Colstrip, Montana. As part of the application process, WECO required all applicants for labor positions to undergo a physical examination consisting of a doctor's examination and a back x-ray. On August 19, 1995, Wagenman was examined. He passed the examination portion of the physical, but received a "poor risk" rating based on the results of his x-ray. On August 21, 1985, the personnel director for the Colstrip mine, Monte Steffan, informed Wagenman that due to his "poor risk" rating WECO would not immediately hire him.

¶ Later that day, Wagenman spoke to Tom Rossetto, a production superintendent for the Colstrip mine. Wagenman testified that Mr. Rossetto informed him he was willing to run a short-handed crew and would hire Wagenman as soon as Wagenman could be "certified," but other members of WECO's hiring team were not interested in hiring Wagenman. Subsequently, Wagenman called Blair Ricks, a personnel officer for Montana Power Company, a company affiliated with WECO. Mr. Ricks informed Wagenman of the Subsequent Injury Fund ("SIF") certification process as well the Montana Human Rights Commission ("MHRC"). Wagenman contacted the

MHRC and indicated that he felt he was being treated unfairly. He also forwarded a cover letter he received from the MHRC to WECO.

¶ At the time Wagenman submitted his job application, WECO was self-insured for purposes of workers' compensation coverage. In order to minimize the cost of insurance, WECO required all job applicants who had failed their physical examination to be certified under the Subsequent Injury Fund, §§ 39-71-901, et seq., MCA (1985), before WECO would hire them. The SIF enabled WECO to limit its liability for subsequent injuries sustained by employees who were certified as "vocationally handicapped" prior to employment. Wagenman was certified for purposes of the SIF and was hired by WECO on October 3, 1985.

¶ In December 1985 a "pushcat" collided with the scraper Wagenman was operating. As a result of the accident, WECO issued Wagenman an "oral reminder." Wagenman was censured for "several issues involving work quality and safety" including "traveling [the] wrong way in areas of poor visibility, cutting too deep during critical top or subsoil salvage, [and] apparent loss of concentration during machine operation."

¶ On February 14, 1986, Wagenman filed a complaint with the MHRC alleging WECO discriminated against him on the basis of his handicap and his race. On July 17, 1986, the MHRC issued a written finding of reasonable cause on Wagenman's claim of handicap discrimination. An administrative hearing was never held on Wagenman's complaint.

¶ On February 27, 1986, Wagenman was laid off during a major reduction in force due to WECO's lack of contracts to produce coal. Wagenman was notified on August 28, 1987, that, pursuant to the agreement between WECO and Wagenman's union, he would be removed from the Mine Seniority List because he had been laid off for 18 months. All of the 28 scraper operators hired between August and October 1985 were laid off in 1986, and none retained their seniority dates. Of these 28 scraper operators, only 5 were rehired in 1987.

¶ Nineteen operators were hired in August 1987, and fifteen operators were scheduled for "callbacks" on September 8, 1987. It is not clear from the record how many of these operators were scraper operators. However, Mr. Rossetto testified that only five scraper operators were hired during the 1987 rehire because WECO was

concerned about coal production, which requires coal haulers rather than scraper operators. The heavy equipment operators who were hired during the 1987 rehire were not hired from a union call list, but rather were hired pursuant to an oral amendment to the union contract which allowed WECO to call former employees by name. Wagenman applied for a scraper operator position with WECO around the third week of September 1987, but was not rehired. Wagenman's resume was forwarded to Patrick Fleming, an attorney who was representing WECO regarding Wagenman's pending discrimination complaint before the MHRC. On April 4, 1988, Wagenman filed a complaint with the MHRC alleging that he was not rehired because of his race, his handicap, and in retaliation for his previous complaints. Wagenman also reapplied in 1991 and was not hired.

¶ On November 23, 1988, the MHRC issued a Right to Sue Letter to Wagenman entitling him to bring his claim of employment discrimination in district court. Wagenman brought an action in district court on February 24, 1989. On September 25, 1990, Wagenman amended his complaint, adding a cause of action for employment retaliation. Trial was held on January 10 through 13, 1995. The District Court issued its Findings of Fact and Conclusions of Law on May 26, 1998, concluding that Wagenman was neither discriminated against on the basis of a handicap, nor did he suffer retaliation. Wagenman appeals from the resulting final Judgment.

## STANDARD OF REVIEW

¶ We will uphold a district court's findings of fact unless they are clearly erroneous. *DNRC v. Montana Power Co.* (1997), 284 Mont. 59, 63, 943 P.2d 1251, 1254 (citing *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906). To determine whether findings of fact are clearly erroneous, we consider: (1) whether they are supported by substantial evidence; (2) whether the trial court misapprehended the effect of the evidence; and (3) whether based on our review of the record we are left with a conviction that a mistake has been committed. *Montana Power*, 284 Mont. at 63, 943 P.2d at 1254 (citing *Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287). We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

DISCUSSION Discrimination Claim

¶ At trial, Wagenman argued that the delay in hiring him in 1985 constituted employment discrimination based on a physical handicap in violation of the Montana Human Rights Act ("Act"), §§ 49-1-101, et. seq., MCA (1985). The District Court held that Wagenman was not discriminated against because he did not establish a prima facie case of employment discrimination. The District Court also held that WECO had a "legitimate business purpose" for delaying the hiring of Wagenman. Lastly, Wagenman failed to persuade the court that WECO's reason was a pretext for illegal discrimination.

¶ 1. Whether the District Court erred in finding that Wagenman did not establish a prima facie case of employment discrimination?

¶ The Montana Human Rights Act prohibits discrimination in hiring or employment against persons with disabilities. The Act provides, in relevant part:

(1) It is an unlawful discriminatory practice for:

(a) an employer to refuse employment to a person, to bar him from employment or to discriminate against him in compensation or in a term, condition, or privilege of employment because of his . . . physical or mental handicap . . . .

Section 49-2-303, MCA (1985).

¶ In *Martinez v. Yellowstone County Welfare Dept.* (1981), 192 Mont. 42, 626 P.2d 242, we adopted the three-step test for employment discrimination first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668. Under the first stage of that test, a job applicant must establish four elements in order to make a prima facie case of discrimination. A person alleging discrimination must show:

1. The person is a member of the class protected by the statute;

2. the person applied for and was qualified for the position;

3. the person was rejected despite being qualified for the job; and

4. the position remained open and the employer continued to accept applications from persons with comparable qualifications.

*Hafner v. Conoco, Inc.* (1994), 268 Mont. 396, 401, 886 P.2d 947, 950. If the plaintiff establishes a prima facie case, the burden shifts to the employer to rebut the presumption of discrimination by producing a legitimate nondiscriminatory reason for the adverse employment decision. *Hafner*, 268 Mont. at 404, 886 P.2d at 952 (citation omitted). If the employer rebuts the presumption of discrimination, the plaintiff has an opportunity to prove the employer's proffered reason was only a pretext for discrimination. *Hafner*, 268 Mont. at 405, 886 P.2d at 953 (citation omitted).

A. Member of Protected Class.

¶ **The District Court concluded that Mr. Wagenman failed to establish a prima facie case of employment discrimination, in part, because Mr. Wagenman had failed to establish he was handicapped or that WECO regarded Wagenman as handicapped for the purposes of § 49-2-303, MCA. This conclusion was based on the court's finding that Wagenman's back condition "did not interfere with any of [his] major life activities." The court found that "[a]lthough he could not do work which would require shoveling or heavy lifting (over 50 lbs.), Mr. Wagenman was not applying for and had not worked as a laborer required to do shoveling or heavy lifting." The District Court also found that WECO did not regard Wagenman as handicapped because WECO considered him able to perform the job of scraper operator and only delayed hiring him until he was certified as "vocationally handicapped" under the SIF. Wagenman argues that he is handicapped or, in the alternative, that WECO regarded him as handicapped for purposes of the Act.**

¶ **The Act prohibits discrimination in hiring or employment on the basis of a physical handicap. Section 49-2-303, MCA (1985). A person is entitled to the protections of the Act not only if he or she is handicapped, but also if he or she is "regarded as" handicapped by a prospective employer. *See Reeves v. Dairy Queen, Inc.,* 1998 MT 13, ¶ 30, 287 Mont. 196, ¶ 30, 953 P.2d 703, ¶ 30. Because the Act is patterned after the federal Rehabilitation Act of 1973, we have looked to federal case law and federal regulations in interpreting its provisions. *See, e.g., Hafner*, 268 Mont. at 402, 886 P.2d at 950-51.**

¶ **Federal regulations define a handicapped person as someone who has "[a] physical**

or mental impairment that substantially limits one or more of the major life activities" or who is "regarded as having such an impairment." 29 C.F.R. § 1630.2(g) (1997). Physical impairments include physiological conditions that affect the musculoskeletal system. 29 C.F.R. § 1630.2(h). "Major life activities" include activities such as working. 29 C.F.R. § 1630.2(i). An employer does not necessarily regard an employee as "substantially limited" in his or her ability to work simply by finding the employee is incapable of satisfying the demands of a particular job. *Hafner,* 268 Mont. at 402, 886 P.2d at 951. Instead, the reference to substantially limited indicates that an employer regards an employee as handicapped in his or her ability to work by "finding the employee's impairment to foreclose generally the type of employment involved." *Hafner*, 268 Mont. at 402, 886 P.2d at 951 (quotation omitted). People regarded as handicapped include people who suffer adverse employment decisions based on "common attitudinal barriers" such as employers' fears about "productivity, safety, insurance, liability, . . . [and] *workers' compensation costs*." C.F.R. pt. 1630, app., § 1630.2(l) (emphasis added).

¶ We conclude that the facts do not support the District Court's finding that WECO did not regard Wagenman as handicapped. The District Court found that it was only the radiologist's categorization of Wagenman as a "poor risk" because of his back condition that prevented his immediate hiring. On the basis of this categorization, WECO believed Wagenman had an impairment which affected his musculoskeletal system. WECO delayed hiring Wagenman until he was certified as "vocationally handicapped" under the SIF in order to limit its workers' compensation liability, despite the fact that WECO believed Wagenman was capable of performing the particular duties of a scraper operator. We note that a vocational handicap for purposes of the SIF is defined as "a medically certifiable permanent impairment which is a substantial obstacle to obtaining employment." Section 39-71-901, MCA (1985). WECO required all applicants for labor positions to undergo a physical examination and would not have hired Wagenman if he had not been certified as vocationally handicapped. In light of the District Court findings, it is clear that WECO regarded Wagenman as having a physical impairment that, pending certification, foreclosed generally employment in a labor position. Accordingly, we conclude that Wagenman established that he was a member of the class of persons protected by the statute.

B. Other Elements of a Prima Facie Case.

¶ The District Court found that, except for certification under the SIF, Wagenman was qualified at the time he applied, he was not initially hired, and facts indicated that the position was held open pending Wagenman's certification. As addressed below, the requirement that Wagenman be certified under the SIF could only be considered a qualification for the scraper operator position if it did not constitute unlawful employment discrimination. Therefore, we conclude that Wagenman established a prima facie case of employment discrimination.

¶ 2. Whether the District Court erred in concluding that WECO proffered a "legitimate business purpose" for its adverse employment decision?

¶ If a plaintiff establishes a prima facie case of employment discrimination, the burden shifts to the employer to rebut a presumption of discrimination by producing a "legitimate, nondiscriminatory reason" for the adverse employment decision. *Hafner*, 268 Mont. at 404, 886 P.2d at 953 (citation omitted). However, when the employer acknowledges that it relied on the plaintiff's handicap in making its employment decision, the issue becomes whether or not the employer's action was illegal. *Cf. Reeves*, ¶¶ 16-18.

¶ The District Court found that WECO delayed hiring Wagenman in order to take advantage of the SIF and concluded that this was a "legitimate business purpose" inasmuch as it limited WECO's liability had Wagenman's back injury been exacerbated or reinjured while employed by WECO. We have concluded that WECO regarded Wagenman as handicapped because of his back condition. WECO acknowledges relying on this impairment in making its employment decision. Consequently, the issue is not whether WECO had a "legitimate business purpose" for delaying the hiring of Wagenman. Rather, the issue is whether the purpose of WECO's discrimination was lawful despite the fact that WECO's decision was based solely on its perception of Wagenman's handicap. We conclude that the District Court applied the wrong standard. However, we will uphold the result reached in the district court, regardless of the reasoning used by the district court, if the decision is correct. *See Norman v. City of Whitefish* (1993), 258 Mont. 26, 30, 852 P.2d 533, 535 (citation omitted).

¶ Whether WECO's proffered reason for discriminating against Wagenman was legal depends on whether an employer could delay hiring a job applicant it regarded as disabled pending certification under the SIF. Section 49-2-303(1), MCA (1985),

originally enacted in 1974, prohibits discrimination in employment based on a physical handicap. However, § 39-71-905, MCA (1985), originally enacted in 1973, required prospective employees to be certified as vocationally handicapped *"before entering new employment"* in order for the new employer to receive the benefits of the SIF. (Emphasis added.) Consequently, the SIF provisions required a self-insured employer who wanted to hire a job applicant they regarded as "vocationally handicapped," but who also wanted to take advantage of the liability limitations under the SIF, to discriminate against that applicant on the basis of his or her handicap by delaying hiring the applicant until he or she was certified.

¶ At least superficially, the two statutes appear to be in conflict. The rules of statutory construction require us to reconcile statutes if it is possible to do so in a manner consistent with legislative intent. *See Ross v. City of Great Falls*, 1998 MT 276, ¶ 19, 291 Mont. 377, ¶ 19, 967 P.2d 1103, ¶ 19. It is presumed that when enacting new legislation, the Legislature "does not intend to interfere with or abrogate a former law relating to the same matter unless the repugnancy between the two is irreconcilable." *Ross*, ¶ 17 (quotation omitted). The SIF provisions relate to the same matter as the Act. One of the objectives of both statutes is to encourage the employment of the physically handicapped: the SIF encourages employment of the handicapped by limiting the workers' compensation liability of self-insured employers for subsequent injuries; the Act encourages employment of the handicapped by prohibiting unlawful discrimination.

¶ We think the statutes are reconcilable in a manner consistent with legislative intent. Significantly, the Act provides for exceptions to the general prohibition against employment discrimination on the basis of a physical handicap. The Act provides that employers may discriminate on the basis of a physical handicap when the reasonable demands of the position require a physical handicap distinction. Section 49-2-303(1), MCA (1985). Employers may also discriminate on the basis of a physical handicap when the "nature or extent of the handicap reasonably precludes the performance of the particular employment or *where the particular employment may subject the handicapped . . . to physical harm*." Section 49-4-101, MCA (1985) (emphasis added); *see also Hafner*, 268 Mont. at 405, 886 P.2d at 953 (holding that employer articulated a legitimate reason for discriminating against an applicant by proving that position *may* subject that applicant to physical harm).

¶ We conclude that when the reasonable demands of the particular position indicate

the possibility that an applicant's preexisting injuries might be subsequently aggravated, a delay in hiring pending SIF certification does not violate the general prohibition against handicap discrimination in employment. In this regard, we note that Mr. Rossetto testified that all labor applicants were required to take a physical and x-ray examination. Dr. Shaw testified that heavy equipment operation is a "medium labor" position. Mr. Rossetto testified that scraper operators operate over rough terrain and are subject to bouncing and he recalled one incident in which a scraper operator injured his back while performing his job and took a year to recuperate. Under these circumstances, it was reasonable for WECO, as a self-insured employer, to delay hiring Wagenman as a scraper operator until Wagenman was certified under the SIF.

¶ Accordingly, we conclude that, although WECO discriminated against Wagenman because it regarded him as physically handicapped, it was lawful discrimination.

¶ 3. Whether the District Court erred in finding that Wagenman did not prove that WECO's reason for discriminating against him was pretextual?

¶ If the employer rebuts the presumption of discrimination by proffering a legal purpose for discriminating against the plaintiff, the plaintiff has an opportunity to prove the reason was only a pretext for illegal discrimination. *Hafner*, 268 Mont. at 405, 886 P.2d at 953 (citation omitted). Pretext may be proved directly, by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. *Hearing Aid Inst. v. Rasmussen* (1993), 258 Mont. 367, 372, 852 P.2d 628, 632 (citation omitted).

¶ Wagenman claims the only reason WECO requested he be certified under the SIF was because he complained to the Human Rights Commission. Wagenman also claims the court did not consider evidence that WECO's preemployment physical procedures were flawed in that back x-rays were limited in terms of being predictive of future problems. Lastly, Wagenman asserts the District Court erred by not admitting the Final Order in a MHRC decision concerning a complaint filed by Elza Edwards in November 1995. He claims this decision is evidence WECO was on notice that its preemployment physical procedures were considered illegal.

¶ There is substantial credible evidence that WECO informed Wagenman of the

certification process and did not use the SIF certification procedures as a pretext. The court found that the suggestion that Wagenman file a complaint with the MHRC if he felt discriminated against was from Mr. Ricks, an official of the Montana Power Company, a company affiliated with WECO. Mr. Ricks also informed Wagenman of the SIF certification procedures. Moreover, Wagenman did not file his complaint with the MHRC until after WECO had hired him.

¶ There is also substantial credible evidence that WECO's preemployment physical was effective in determining that WECO should seek to certify Wagenman under the SIF before hiring him. As a result of the back x-ray Wagenman underwent as part of WECO's pre-employment physical examination procedures, WECO was apprised of Wagenman's preexisting back condition; WECO sought Wagenman's certification under the SIF as "vocationally handicapped;" Wagenman was certified; and WECO hired him.

¶ We do not see how the admission of the Final Order in Elza Edwards' MHRC case could establish WECO was on notice that its preemployment procedures were "flawed" at the time of Wagenman's application. Mr. Edwards' complaint was filed on November 22, 1985, three months after Wagenman's physical examination and almost two months after WECO hired Wagenman. Moreover, the MHRC did not issue its Final Order regarding WECO's preemployment procedures until August 8, 1990, almost five years after Wagenman's initial application. "Evidence which is not relevant is not admissible." Rule 402, M.R.Evid. Irrelevant evidence is evidence that does not have any value, as determined by logic and experience, in proving the proposition for which it is offered. Rule 401, M.R.Evid. The Final Order issued by the MHRC in the Elza Edwards' case does not have any value in proving that WECO was on notice that its preemployment procedures were flawed at the time Wagenman applied for the position, and therefore the District Court did not abuse its discretion by not admitting it.

¶ Accordingly, the court's finding that Wagenman did not bear his burden of proving by a preponderance of the evidence that WECO's proffered excuse was pretextual is supported by substantial credible evidence.

¶ We conclude that the District Court erred in determining that Wagenman did not establish a prima facie case of employment discrimination. However, we conclude that WECO proffered a lawful reason for discriminating against Wagenman and

that the District Court's finding that this reason was not pretextual is supported by substantial credible evidence. We affirm the denial of Wagenman's claim of employment discrimination.

Retaliation Claim

¶ 4. Whether the District Court erred in finding that Wagenman did not prove by a preponderance of the evidence that WECO retaliated against him?

¶ Retaliation against an employee is also prohibited by the Montana Human Rights Act. Section 49-2-301, MCA, provides, in relevant part:

It is an unlawful discriminatory practice for a person . . . to discharge, expel, blacklist, or otherwise discriminate against an individual because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified, assisted, or participated in any manner in an investigation or proceeding under this chapter.

As noted above, we have referred to federal case law when construing the provisions of the Act. *See, e.g., Hafner*, 268 Mont. at 402, 886 P.2d at 950-51. Under federal case law, a plaintiff bringing a cause of action for retaliation is required to establish a prima facie case of retaliation by showing that he or she engaged in a protected activity, he or she suffered an adverse employment decision, and that there was a causal link between the two. *See Wrighten v. Metro. Hosp., Inc.* (9th Cir. 1984), 726 F.2d 1346, 1354 (citation omitted). However, the critical question is whether the plaintiff has proven by a preponderance of the evidence that the defendant intentionally discriminated or retaliated against the plaintiff for engaging in protected activity. *See Wrighten*, 726 F.2d at 1354 (citation omitted).

¶ The District Court found Wagenman had engaged in protected activities, namely the filing of a claim with the Human Rights Commission, and Wagenman suffered adverse employment decisions in that he applied for positions with WECO in 1987 and 1991, but was not hired. However, the court also found WECO had legitimate business reasons for not hiring Wagenman. These reasons included the performance problems noted in the "oral reminder" Wagenman received as a result of an on-the-job accident in which he was involved.

¶ We conclude that the District Court adequately considered the full range of evidence presented to it. Wagenman points to the fact that a hearing on his employment discrimination complaint was set for August 1987, that the resume he submitted in September 1987 was forwarded to Pat Fleming, WECO's counsel of record, and that Mike Hanson, Wagenman's union representative, testified that Mr. Rossetto told him, "I would put [Wagenman] back to work, . . . but there had been ongoing litigation in this thing for some time." In fact, Mr. Hanson testified that Mr. Rossetto told him he could not speak directly with Wagenman because of the ongoing litigation between WECO and Wagenman; Mr. Hanson did not testify that Mr. Rossetto told him WECO would not hire Wagenman because of his complaint. Moreover, the performance problems noted in Wagenman's oral reminder are a legitimate consideration in WECO's decision not to rehire him. More significantly, the court also found that all of the 28 scraper operators hired between August and October 1985 were laid off in 1986, none of these scraper operators retained their seniority dates, only five were rehired in 1987, and that the 1987 rehiring was done in accordance with an agreement between WECO and Wagenman's union.

¶ Although the court noted that it could not entirely rule out the possibility that Wagenman was retaliated against because he filed complaints with the MHRC, the court found that Wagenman failed to prove by a preponderance of the evidence that he was not rehired in retaliation for those filings. We review a district court's findings to determine whether there is evidence to support the decision of the court, not whether evidence was presented which might have supported contrary findings. *Montana Power,* 284 Mont. at 63, 943 P.2d at 1254. We conclude there is substantial evidence to support the District Court's finding that Wagenman did not prove by a preponderance of the evidence that WECO retaliated against him when it refused to hire him in 1987 and 1991.

¶ Accordingly, we affirm the conclusions of the District Court that the delay in hiring Wagenman did not constitute unlawful employment discrimination and that WECO did not retaliate against Wagenman.

/S/ JIM REGNIER

We concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER